Turner *v.* Hill.

CATHERINE E. TURNER

*v.*

WILLIAM HILL et al.

[Filed January 3d, 1898.]

1. Where no definite direction is given by a debtor to apply a balance of account in the hands of a creditor to any one or more of several debts due the creditor, the latter may make the application.

2. In making it he may not, without the debtor's direction, appropriate it to the payment of a debt of his debtor which he does not hold.

3. If the creditor applies it generally, the court will recognize his appropriation so far as he had power to make it, and will apportion it ratably towards the payment of all the debts of the debtor which the creditor held, to which he applied it generally, where such apportionment accords with equitable principles.

4. When a subsequent lien creditor or holder of lands claims that a credit has been applied in satisfaction of a precedent lien, the burden is upon the party who alleges the application to prove it.

On bill to foreclose.

The bill is filed by the complainant to foreclose six mortgages upon a number of tracts of land in Warren county. The defendants are William Hill, the owner of the equity of redemption, and his wife, several judgment creditors of Hill and Thomas P. Frome, who is both a judgment creditor of Hill and a grantee from him of one of the tracts described in several of the mortgages. Frome is the only litigating defendant, and the questions presented arise in the ascertainment of his equities as judgment creditor of Hill and as grantee of the one tract.

The six mortgages held by the complainant were all originally made by the defendant William Hill, and were given for the principal amounts and recorded at the dates following:

One to William Trimmer for $1,000, recorded April 9th, 1877.

One to Isaac Dill for $1,000, recorded September 11th, 1879.

One to First National Bank of Washington for $2,385, recorded April 16th, 1890.

One to Hackettstown National Bank for $2,500, recorded April 29th, 1890.

Another to Hackettstown National Bank for the same debt, recorded August 18th, 1890.

And the last, called an additional and collateral mortgage, to the complainant, Catherine E. Turner, dated and recorded May 18th, 1894, for $5,000.

The mortgage recorded April 29th, 1890, to Hackettstown National Bank, and the last mortgage to the complainant, recorded May 18th, 1894, are the only mortgages which assume to be liens upon tract No. 14 in the bill of complaint, which is an undivided one-half part of thirty-seven and one-half acres of land.

This undivided interest the complainant conveyed in fee to the defendant Thomas P. Frome, by deed dated January 6th, 1894, recorded May 16th, 1894. The effect of this conveyance was to pass the title to this tract, No. 14, out of the mortgagor, Hill, before he gave the mortgage of May 18th, 1894, to the complainant, so that Hill's mortgage of that date to the complainant is no lien on that tract.

All of the above-named mortgages, except the first (Trimmer's) and the last, which was given to the complainant, had in May, 1894, come to be owned by one John Karr, who had purchased them from various holders. While he held these mortgages he had received possession of the mortgaged premises, and had permitted the mortgagor to stay on the place under lease from him, had stocked and equipped the farm, and had received the profits which he had in great part expended for the benefit of the mortgagor, in rent and other expenses, resulting, however, in leaving a balance in his hands of $1,287.83. In May, 1894, Karr being still the holder of the mortgages, except the Trimmer mortgage, desired to raise money upon them, and applied to Judge Morrow for $5,000, seeking to effect a sale of the Trimmer first mortgage, and all the other subsequent

mortgages which Karr then held.   An arrangement was made by which the complainant, through Judge Morrow, advanced the $5,000.   The Trimmer mortgage, and the four others held by Karr, were assigned absolutely to her with the bonds and notes the payment of which ᴠthey secured.   It was noticed that the wife of the mortgagor, Hill, had not signed some of the later mortgages, and to bind her dower, and as an additional security, a new mortgage upon all the several tracts described in all the previous mortgages was executed and delivered by Hill and his wife to the complainant.

The mortgages all being due, the complainant filed her bill to foreclose them, making the mortgagor, Hill, and his wife, and several judgment creditors, and Frome in respect to his deed for tract No. 14, and his judgment against Hill, defendants.   No answers have been filed by any defendant except Frome.

*Mr. Joseph M. Roseberry,* for the complainant.

*Mr. L. De Witt Taylor,* for the defendant Frome.

*Mr. William H. Morrow,* for the defendant Amelia Clayton, and also *pro se.*

GREY, V. C.

A computation of the amounts due on the several mortgages is necessary to an understanding of the action of the parties in the premises.   The testimony shows that at the time of the assignments to the complainant, May 11th, 1894, there was due on the mortgage of Hill to Trimmer—

For principal and interest............................................ $1,061 39

On the Hill to Dill mortgage (which was pledged to Trimmer by Karr) the consideration of the assignment to the complainant on May 11th, 1894, is stated to be........................................................... 1,296 26

On the Washington Bank mortgage there was due on the notes it secured on July 2d, 1891 (the date when this mortgage and notes were assigned to Karr), after crediting all payments made by Hill.... $2,123 65

Turner v. Hill.

| | | |
|---|---|---|
| There is no proof of any payments to Karr on these notes or mortgages. I therefore add interest on the principal of the notes from July 2d, 1891, to May 18th, 1894, the time of the transfer to complainant. The aggregate principal sum of the note is $2,077.24, and the interest from July 2d, 1891, to May 18th 1894, is................................. | $358 46 | |
| Making amount of principal and interest due on Washington Bank mortgage, &c., on May 18th, 1894 (date of assignment to complainant), to be............... | | $2,482 11 |
| The Hackettstown Bank had two mortgages, both securing the same set of notes; on these there was due for principal on the notes at the time Karr purchased the securities, July 9th, 1891..... | $1,224 15 | |
| Interest then due ................... $26 52 | | |
| Interest from July 9th, 1891, to date of assignment to complainant, May 18th, 1894.. ..... 209 88 | 236 40 | |
| Amount due on Hackettstown Bank mortgage on May 18th, 1894 (date of assignment to complainant), if no allowance be made by applying the credit in Mr. Karr's hands due the mortgagor.......... | | 1,460 53 |
| Total amount due on all mortgages, not applying the credits due Hill, in Karr's hands ........................ | | $6,300 29 |

For the assignments of these mortgages which were made on May 11th and May 18th, 1894, to the complainant, the sum of $5,000 was paid by her. Mr. Karr made an absolute transfer of them to the complainant. He gave no obligation of his own which these mortgages, &c., were pledged to secure. He owes nothing to the complainant, and she has become, by her purchase, the absolute owner of all that is due on the securities. When Karr sought to raise the $5,000 on the mortgages which he held, it appeared that the mortgagor's wife had not signed the later mortgages, and he was obliged to secure an additional mortgage to be made to the complainant on all the tracts, in

Turner *v.* Hill.

which the wife joined, in order to secure the money. This mortgage is the complainant's last mortgage, and, Judge Morrow testifies, was given as a collateral mortgage.

Judge Morrow disbursed the fund, and testifies that he paid—

| | | |
|---|---:|---:|
| To Trimmer, for the Hill-Trimmer mortgage........... | | $1,061 39 |
| To Trimmer for Karr, for the Dill mortgage .. ...... | | 1,296 26 |
| To Karr, for the Washington Bank and Hackettstown Bank mortgages, the following checks were given by Judge Morrow: | | |
| May 18th, 1894........................................ | $1,200 00 | |
| June 2d, 1894...................................... | 750 00 | |
| August 30th, 1894............................... | 578 63 | |
| | | 2,528 63 |
| Making the total expenditure by Morrow for the purchase of all the mortgages to be.......................... | | $4,885 28 |

In addition to the above payments Judge Morrow states that out of the complainant's advance of $5,000 he was paid for his services in conducting the business, and that he also paid some arrearages of interest on an outside mortgage with Mr. Karr's assent.

The testimony is somewhat confused as to these detailed items of the subsequent disbursement, but it is quite clear that the complainant's money was all paid either to Mr. Karr himself or by his direction to others, and that she became by the assignments the owner of all the mortgages which she now seeks to foreclose.

The defendant insists that the Hackettstown Bank mortgage, dated April 28th, 1890, which is the only one held by complainant which is a lien upon the undivided one-half of the thirty-seven and one-half acre tract (No. 14 in the bill), has been actually paid by the application of the credit in the hands of Mr. Karr (while the holder of that mortgage), in favor of William Hill, the mortgagor; and that if such a credit was not actually made, then that in equity it ought to be made, because the defendant claims it was directed to be made by the mortgagor, or if not so directed then that the credit in the hands of the holder of the mortgage, having arisen from the issues and

profits of the mortgaged premises, it should be made by the court.

The proof shows that this credit arose as follows : The mortgagor, Hill, had accepted a lease of the mortgaged premises from Mr. Karr. Hill continued to have the actual possession not only of the mortgaged premises, but also of horses, cattle and the stock equipment of the farm, which had been bought by Karr at a chattel mortgage sale, upon an understanding between Hill and Karr that these chattels were to belong to Hill as soon as he had paid for them. Mr. Karr paid the running expenses and supplies of the farm, interest on some of the mortgages, the expenses of a foreclosure and the purchase of stock, horses and cattle. He received in actual gross receipts $3,946.27. He did not apply any of it to the payment of the Hackettstown Bank mortgage which he held. He had a balance of $1,287.83 in his hands, a credit in Hill's favor that had not been applied when all the mortgages were about to be assigned to the complainant. He swears that while it was a matter of discussion between him and Hill, the mortgagor, as to what mortgage it should be applied on, the Hackettstown Bank mortgage and the Washington Bank mortgage both being mentioned, that Hill spoke as if he wanted it applied on the Hackettstown Bank mortgage, but Karr swears that Hill did not give him (Karr) any direction or order to apply it to any particular mortgage.

The testimony of Mr. Karr on this point was fairly shown by these questions and answers :

"*Q.* Have you any of that money in your hands now?

"*A.* No, sir.

"*Q.* Had you when you assigned the Hackettstown Bank mortgage to Miss Turner?

"*A.* I had; I had an account with Mr. Hill, debit and credit account of the whole transaction, and when this account was closed up there was $1,287.83 that should have been endorsed on those mortgages.

"*Q.* Which mortgages?

"*A.* That I can't say; on the whole of them.

"*Q.* Which mortgage was it to be endorsed upon by Mr. Hill's agreement or direction?

"*A.* There was no definite agreement in regard to that."

Turner *v.* Hill.

He further states :

"I was to use that money in any way that I chose for his [Hill's] benefit.

"*Q.* Did you so use it ?

"*A.* I did.

"*Q.* How did you use it for his benefit; what did you do with the funds?

"*A.* With the $1,287, or with the whole fund?

"*Q.* No, the $1,287, the rest you say you applied; what did you do with it at any time?

"*A.* These mortgages that I held, amounting to some $5,000, and Trimmer's together amounted to some $6,300, and I said to Judge Morrow at the time that these assignments were made that there was $1,287.83 that should be applied on some of these mortgages; I did not know on which to apply them.

"*Q.* What was done with them?

"*A.* Judge Morrow said, after that credit is made, does it still leave $5,000 due on those mortgages? I told him yes, that is true."

Karr further testifies that this $1,287.83 credit in favor of Hill was to have been credited on these mortgages as he stated to Morrow, and that the credit was definitely ascertained to be that amount " at the time they arranged the settlement in George Morrow's office." This was the time the transfers were made to the complainant.

I think it is quite evident that there was no definite instruction by the mortgagor as to the application of this credit. The witness Karr testifies that its application was discussed between himself and the mortgagor, and the Hackettstown Bank mortgage seems to have been favorably considered, but its application to pay the Washington Bank mortgage was also talked over, and at the time when the final transfers were made to the complainant, no direction for appropriation to any particular mortgage had been given by the mortgagor, nor until that time was the actual amount of the credit apparently known to the parties.

Mr. Karr then applied it generally as a credit on the whole sum due on all the mortgages ; the ascertainment of the credit and its application appear to have been substantially coincident. Karr treated the mortgages as calling for $6,300 before the credit was applied, and for over $5,000 afterwards, and this very nearly accords with the amounts due on all the mortgages as above shown.

Hill was present in Morrow's office at the time of the settlement and assignments of the mortgages. He knew he had this credit balance of $1,287.83 in Mr. Karr's hands; he joined with his wife in making the additional collateral mortgage to the complainant for $5,000, the amount due on all the mortgages after applying the credit, and it is difficult to believe Hill took so important a part in that settlement, and would have permitted Mr. Karr to apply this credit generally on all the mortgages, if he (Hill) had already directed it to be applied on the Hacketts-town Bank debt.

Hill was himself the best witness to the fact that he had directed an appropriation of this credit to be made towards the payment of the Hackettstown Bank mortgage, if he had made any such direction. He was not called for the defendant. The burden of supporting the allegation in the answer that the Hackettstown Bank mortgage had been paid, is upon the defendant who makes the claim. The evidence does not support it.

Hill, the mortgagor, who was entitled to the credit, was the debtor who created and owed all the bonds and notes secured by all the mortgages. As he had made no application of it to any specific mortgage before the settlement, Mr. Karr, the creditor, who held Hill's bonds and mortgages, had the right to appropriate it to such of them as he chose. He did apply it by giving a general credit of the amount remaining in his hands upon the whole amount due on all the mortgages, so that after the application of the credit they should, as a whole, stand as securing the payment of $5,000. On the faith of this assurance the complainant's $5,000 was delivered and disbursed, and I think she is entitled to the benefit of the statements then made by Mr. Karr, that that sum remained due on those mortgages after the application of the credit.

As there was no direction by Hill that the credit should be applied to the Hackettstown Bank mortgage, and it was applied generally by Mr. Karr, without specific appropriation of any definite sum to any particular mortgage, the application of the credit still remains incomplete. So far as Mr. Karr had power to apply it, and so far as he actually did apply it, I think his

action should be recognized as a forceful appropriation, but to the extent that he lacked the power to apply or failed to do so in an effectual manner, the court should apply the credit in accordance with equitable principles.

Mr. Karr assumed to apply the credit in reduction of the amount due on all the mortgages, including that made by Hill to Trimmer. Mr. Karr, as Hill's creditor, having money in his hands due Hill, had the right, when Hill did not direct its application to any one of his debts, to apply it to such of the debts he held against Hill as he (Karr) should choose. Karr testified that he thought the lease authorized him to apply the credit as he chose, but the lease dated March 25th, 1891, under which Hill held the premises till the spring of 1894, under which the credit accumulated in Karr's hands, gave him no special right to appropriate the credit. His authority was simply that of a creditor who might apply a credit when his debts did not. But he had no right to apply it to any debt of Hill's held by someone else unless by Hill's direction. As to such debts he was not Hill's creditor. In May, 1894, when the application was made at the time of the settlement in Morrow's office, Mr. Karr was not the holder of the Trimmer mortgage. There is no proof that Hill directed the application of any part of the credit to the payment of this mortgage, and Mr. Karr had no authority, without Hill's direction, to appropriate the credit, in whole or in part, to pay Hill's debt to Trimmer. No special application was made of it to Trimmer's mortgage, but that debt was included in the computation of the aggregate $6,300 of Hill's debts to which Karr applied the credit generally. This application, so far as the Trimmer mortgage is concerned, must be disregarded and the credit must be appropriated only towards the satisfaction of those mortgages which Karr, who made the appropriation, then held.

Mr. Karr, however, while having the right to apply the credit, and actually applying it generally, did not indicate any proportion or order in which the credit should be applied to the mortgages which he held. The rule is, that when neither the debtor nor the creditor directs the application to the payment of any

particular debt the court may appropriate it, and in so doing the court will usually apply it to the payment of that debt which has the least security, upon the assumption that the debtor would desire to pay all his debts, and this disposition of the credit most nearly accomplishes that result. *Terhune* v. *Colton, 1 Beas. 238, 312 ; Leeds* v. *Gifford, 14 Stew. Eq. 469.*

No other evidence has been offered in this case which can be used to show that any one of the mortgages held by Mr. Karr in May, 1894, was a less certain security for the payment of the mortgage debt than the others, save that which arises from the inference that the subsequent mortgages have less likelihood of payment than the prior ones, where they all cover the same property. But the mortgage securing the last-created debt to the Hackettstown Bank is additionally secured by including tract No. 14, and as no proof has been made which shows that this mortgage, with this additional tract, is in any way less secure than any of the others held by Karr, there seems to be no reason for selecting any particular mortgage to receive the whole benefit of the credit. Mr. Karr's act of appropriation was general on account of all of them. An application of the credit in proportionate reduction of all of the mortgages which he held accords with the spirit of his appropriation. I think the rights of all the parties are fairly recognized by the perfecting of the application left incomplete by Mr. Karr, and apportioning the credit of $1,287.83 in *pro rata* satisfaction of all the mortgages held by him when the settlement was made.

It is insisted that the defendant Frome has a right to have the credit so applied as to discharge the Hackettstown Bank mortgage, and thus allow him to hold tract No. 14 clear of any lien. The burden was upon Mr. Frome to prove some fact or contract which would support such an equity. He made no such proof. He did offer by his own testimony to prove what Hill had said to him about such an appropriation on two occasions, one before this suit was begun and the other afterwards. This testimony was objected to and rejected, because there was neither proof nor offer to prove that Hill, who was entitled to the

credit, had made the statement as to appropriation in the presence or with the knowledge of Karr, who was the creditor. Nor were any circumstances shown which indicated that Karr could have known that Hill had claimed to have made an appropriation. The intention to appropriate to the payment of the particular debt must be signified to the creditor. *Terhune v. Colton, 1 Beas. 237.*

The offer to prove what Hill said as to appropriation after this suit was brought was subject to the same objection, and to the further one that Hill's declaration was made after Karr had applied the credit on Hill's failure to direct its application, and after the complainant had taken the assignments and parted with her money on the assurance that $5,000 was due on all the mortgages, including that to the Hackettstown Bank. The statements of Hill, under the circumstances, were hearsay, and in no way evidential against the complainant.

As to Frome's equitable right to have this court make an appropriation which shall prefer him by selecting the Hackettstown Bank mortgage and satisfy it for his benefit, he has shown nothing to justify such a preference, and as it would negative the assurance under which the complainant parted with her money, by lessening her security for its payment, and would defeat the appropriation generally made by Mr. Karr, the creditor, I think it would be inequitable for this court to make such special application of the credit.

I will advise a decree applying the credit of $1,287.83 in proportionate satisfaction of the amounts secured to be paid by the mortgages held by Karr and which he transferred to the complainant, namely, the mortgages of Hill to Dill, Hill to Washington Bank, and Hill to Hackettstown Bank. The order of sale of the mortgaged premises should be such that tract No. 14, to which the defendant Frome has acquired title, should be the last sold to satisfy any residue remaining unpaid on the Hackettstown Bank mortgage from the other proceeds of sale.