## In re AMERICAN PAPER CO.

(District Court, D. New Jersey. January 22, 1919.)

1. BANKRUPTCY ⟨⟩387—INDORSERS—DISCHARGE.
   Notwithstanding New York Negotiable Instruments Law, declaring that a person secondarily liable is discharged by the release of the principal debtor, the assent of the holder of a note to a composition offered by the maker does not, under Bankruptcy Act, § 16 (Comp. St. § 9600), discharge the indorser, for the discharge of the maker is brought about by operation of law, and not the voluntary act of the parties.

2. PAYMENT ⟨⟩41(1)—APPLICATION BY COURT.
   When neither debtor nor creditor makes application of payment, they cannot do so after controversy or litigation has been instituted, and the court should make the appropriation in accordance with equitable principles.

3. PAYMENT ⟨⟩44—APPLICATION.
   When the security is the same, it is the rule in the federal courts, as well as in the state of New Jersey, to apply a payment without designation, first to the oldest obligation.

4. PAYMENT ⟨⟩46(1)—APPLICATION—EFFECT OF SECURITY.
   When the security is not the same, the rule is to apply an undesignated payment to the obligation least secured, or whose security is most precarious.

5. BANKRUPTCY ⟨⟩273—APPLICATION OF PAYMENTS—RULES.
   Where the trustee in bankruptcy agreed with a creditor that bonds held by the creditor should be retained and applied as a general payment upon its claim, rule for application of payment stated, and payment directed applied first to debts least secured.

6. BANKRUPTCY ⟨⟩273—PAYMENTS.
   Where trustee in bankruptcy consented to a creditor's retention of bonds held as collateral, and the payment was sufficient, in connection with dividends received by creditor on claims for which bankrupt was only secondarily liable, to pay all amounts for which bankrupt was primarily liable, and leave a surplus applicable to payment of claims for which bankrupt was only secondarily liable, the creditor was entitled to retain dividends on claims for which the bankrupt was secondarily liable, until it received full payment, but trustee was subrogated to future dividends.

7. BANKRUPTCY ⟨⟩273—APPLICATION OF PAYMENTS.
   Where a creditor held bonds of a bankrupt, and after bankruptcy the trustee agreed that they should be applied by the creditor to its claims, but no mode of application was agreed upon, the court, in making application, will determine the matter as of the time of bankruptcy, and not the date when the trustee agreed that the creditor might apply the bonds to payment of its claim.

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Bankruptcy. In the matter of the American Paper Company, bankrupt. On review of referee's order subrogating the trustees of the bankrupt to the rights of Wilkinson Bros. & Co. in its claim filed against another bankrupt. Order reversed.

See, also, 243 Fed. 753.

McDermott & Enright, of Jersey City, N. J., for trustee.
Allan C. Rowe, of New York City, for Wilkinson Bros. & Co.

DAVIS, District Judge. The American Paper Company, hereinafter called the Paper Company, Wilkinson Brothers & Co., hereinafter called the Wilkinson Company, George F. Hills Company, hereinafter called the Hills Company, and the Webb Folding Box Company, hereinafter called the Webb Company, did business with one another. All of said companies, with the exception of the Wilkinson Company, became bankrupt; the Paper Company on July 10, 1914, the Webb Company on July 27, 1914, in the district of New Jersey, and the George F. Hills Company on July 8, 1915, in the Southern district of New York. A claim was filed against the Paper Company by the Wilkinson Company, which after some modification was allowed on December 22, 1915, as follows:

(1) Merchandise, open account ................................... $ 2,171.36
(2) Six notes of American Paper Company...................... 13,780.15
(3) Three notes of American Paper Company, indorsed by George F.
      Hills Company ..................................... 3,014.12
(4) Four Fey notes, indorsed by American Paper Company.......... 2,208.69
(5) Two Tucker notes, indorsed by American Paper Company...... 1,027.48
(6) Twenty-one notes of Webb Folding Box Company, indorsed by
      American Paper Company, and protest fees................. 10,729.32
(7) Sixteen notes of George F. Hills Company, indorsed by American
      Paper Company.................................... 12,038.57
                                                          _____
                                                          $44,989.69

At the time of filing the said claims the Wilkinson Company held as security for its debt first mortgage bonds of the Paper Company amounting at par to $38,000. In January, 1916, it was agreed between the Wilkinson Company and the trustee of the Paper Company that the said bonds should be retained by the Wilkinson Company and applied as a general payment upon its claim against the Paper Company, and that the said claim be reduced thereby to $6,967.69. There was no agreement whatever between the trustee of the Paper Company and the Wilkinson Company as to how the said bonds should be applied in payment of the various items in said claim, and this contest really results from the manner in which they are sought to be applied. The Wilkinson Company filed a claim against the Webb Company, but the Paper Company did not. The Paper Company contends that its bonds as a fact have been applied to the payment of the Webb Company notes on which it was indorser, and that it has the common right of an indorser, upon taking up indorsed paper, to proceed against the principal, and therefore it should be subrogated to the rights of the Wilkinson Company in the claim filed. The referee made an order subrogating the trustee of the Paper Company to the

rights of the Wilkinson Company in its claim filed against the Webb Company to which an exception was taken, and that order is before me for review.

On June 25, 1915, the Wilkinson Company made a composition with the Hills Company and received 20 per cent. of its claim against that company, being Nos. (3) and (7) in the claim above mentioned. At the time of the settlement of the bonds in January, 1916, the Wilkinson Company did not disclose that it had made a composition with the Hills Company, or give credit for the 20 per cent. dividend, and thus, the trustee contends, treated these notes as unpaid, and if this is so the Webb Company notes must have been satisfied out of the bonds of the Paper Company. It was the duty of the Wilkinson Company to disclose the composition of the Hills Company at the bond settlement in January, 1916, and it is difficult to reconcile its failure to do so with an honest purpose; but it does not follow that its failure to do so establishes the satisfaction of the Webb notes out of the bonds, or that the Wilkinson Company so regarded it.

[1] The trustee further contends that the American Company was discharged from its obligations as indorser on the notes of the Hills Company by the composition, and therefore the $38,000 paid the Webb Company notes, and the trustee of the Paper Company should be subrogated to the rights of Wilkinson Company in its claim filed against the Webb Company. This position is supported by the opinion of Referee Stone in the Matter of Harry Benedict, 18 Am. Bankr. Rep. 604. It was held in that case that the general rule of law, that if the holder of negotiable paper does any act which operates to release the principal, or which impairs the rights or remedies of the surety against the principal, the obligation of the surety will be released, is crystallized in the state of New York (in the Northern district of which this case arose) in the Negotiable Instruments Law, which provides that:

"A person secondarily liable on the instrument is discharged: 1. By any act which discharges the instrument. * * * 3. By the discharge of a prior party. * * * 5. By a release of the principal debtor, unless the holder's right of recourse against the party secondarily liable is expressly reserved." Consol. Laws, c. 38, § 201.

A release, therefore, through composition of the principal, discharges the liability of the surety, notwithstanding the provisions of section 16 of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 550 [Comp. St. § 9600]) that:

"The liability of a person who is a codebtor with, or guarantor or in any manner a surety for, a bankrupt shall not be altered by the discharge of such bankrupt"

—because the relief through composition, though as effectual as a "discharge," is secured through "the co-operation of the creditors." The same rule was applied in that case to a creditor voting for a composition in bankruptcy as to a person making a voluntary composition deed outside of bankruptcy. There is a difference, however. In the one case the discharge is by the voluntary act of the party; in the other by operation of law, not by the act of the creditor who assented

to the composition. Therefore a different rule should be applied, and the case at bar accordingly comes within the provision of section 16 of the Bankruptcy Act. This seems to be the rule in the states of New York and Massachusetts and in England, as pointed out in the New York decisions. In re Burchell (D. C.) 4 Fed. 406; Guild v. Butler, 122 Mass. 498, 23 Am. Rep. 378; Mason & Hamlin Organ Co. v. Bancroft, 1 Abbott, N. C. (N. Y.) 415; Eastern Furniture Co. v. Caminez, 146 App. Div. 436, 131 N. Y. Supp. 157. This rule seems to be well founded in reason and supported by the greater weight of authority. Therefore the liability of the Paper Company as indorser on the Hills Company notes was not discharged by the composition of the Hills Company.

[2-4] When a payment, insufficient to satisfy two or more debts, is made, and neither the debtor nor creditor makes an appropriation of payment, it is too late for either to make an appropriation after controversy has arisen thereover or litigation has been instituted. It is the duty of the court in such case to make the appropriation in accordance with equitable principles. When the security is the same, the state and federal rule is to apply the payment first to the oldest obligation. When the security is not the same, the rule is to apply the payment first to the obligation least secured, or whose security is most precarious. Terhune v. Colton, 12 N. J. Eq. 312; Frost v. Mixsell, 38 N. J. Eq. 589; Leeds v. Gifford, 41 N. J. Eq. 464, 5 Atl. 795; Turner v. Hill, 56 N. J. Eq. 293, 39 Atl. 137; Field v. Holland, 10 U. S. (6 Cranch) 8, 22, 28, 3 L. Ed. 136; U. S. v. Kirkpatrick, 22 U. S. (9 Wheat.) 720, 6 L. Ed. 199.

[5, 6] Item (5) in the claim filed against the Paper Company, aggregating $1,027.48, is composed of two notes of one Tucker, indorsed by the Paper Company. After the bond settlement of January, 1916, the Wilkinson Company sued Tucker and secured judgment for the full amount of the notes, thereby showing that it elected not to apply any of the bond payment to that item. This is admitted by the Wilkinson Company, and consequently in the appropriation to be made that item should be eliminated.

Items (1) and (2) in claim are obligations of the Paper Company alone. Items (3), (4), (6), and (7) are obligations of the Paper Company and another, either as maker or indorser. Items (1) and (2) should, in accordance with the above rule, be first paid out of the bond settlement, for they rest upon the liability of the Paper Company only, and are manifestly less secured than the other four. The security in items (3) and (7), other than the liability of the Paper Company, is as above stated, 20 per cent. Whether that security is more or less than that of the Fey notes in item (4), or the Webb Company notes in item (6), I am not informed, though counsel for the Wilkinson Company make the general statement that Fey is practically worthless. The security in all four items, (3), (4), (6), and (7), is precarious; but which is more and which is less precarious is, so far as I am aware, unknown. Therefore, after items (1) and (2) are paid out of the $38,-000 bond settlement, the remainder should be applied to items (3), (4), (6), and (7), in accordance with the priority of the obligations. When

this has been done, there will doubtless be a small balance left unpaid on the Webb Company notes, item (6) in said claim.

The Wilkinson Company filed claim against the Webb Company for $10,729.32, the amount of the notes indorsed by the Paper Company, and is entitled to the dividends on that full claim until the same has been paid, if the dividends on the claim are sufficient to pay it. After that claim is thus paid in full, the trustee of the Paper Company is entitled to be subrogated to the rights of the Wilkinson Company as to the balance of the dividends, if any, on the claim filed against the Webb Company.

[7] The Wilkinson Company contends that, since it had compromised items (3) and (7) with the Hills Company before the payment in January, 1916, those obligations were not secured, except by the Paper Company, at the time of the payment, and the security on them was the same as on items (1) and (2), and therefore the payment should be applied to them with items (1) and (2), before anything is paid on the Webb notes. But in this case the security should be determined as of the time of the bankruptcy, and not as of the date of the payment in January, 1916. As a matter of fact, as before stated, the Wilkinson Company had the Paper Company bonds in its possession before the bankruptcy of any of the companies.

An order will be signed in accordance with these conclusions.