[No. 2625. Decided July 15, 1897.]

BELLINGHAM BAY IMPROVEMENT COMPANY, *Respondent*, v. THE FAIRHAVEN AND NEW WHATCOM RAILWAY COMPANY AND THE ATLANTIC TRUST COMPANY, *as Trustee, Appellants.*

MORTGAGE FORECLOSURE — PREFERRED CLAIMS — LIMITATIONS — LACHES — PLEADINGS.

Where the several items of an account have been furnished under an agreement that payment would be made therefor when-

ever the earnings from the operation of a line of railway would permit, the different items composing the account would constitute a single legal demand, and a partial payment applied thereon within the period limited by statute for the commencement of action thereon would operate to extend the bar of the statute from the date of such payment as to the whole account.

The right to priority of lien over a mortgage debt in favor of a claim for supplies furnished a railway company is not lost by laches in asserting it, if an action at law to enforce the demand has not been barred by the statute of limitations.

A debt incurred on account of the operating expenses of a railroad for material and supplies necessary to keep the road a " going concern," conserving its property, preserving the franchise and protecting the interests of the mortgage creditors and all others is a preferential claim entitled to be paid before payments are made by a receiver upon the principal and interest of a prior mortgage upon the property.

A demurrer to a complaint asserting priority of lien over a mortgage upon an unsecured account for materials and supplies is properly overruled, if any item of the account is such as entitles the creditor to a preferred claim.

Appeal from Superior Court, Whatcom County.—Hon. JOHN R. WINN, Judge. Affirmed.

*Kerr & McCord*, and *Burke, Shepard & McGilvra*, for appellants.

*Fairchild & Bruce*, for respondent.

The opinion of the court was delivered by

GORDON, J.—Separate appeals have been taken by the Fairhaven and New Whatcom Railway Company and the Atlantic Trust Company, as trustee, from a judgment and decree of the superior court of Whatcom county which awarded respondent, the Bellingham Bay Improvement Company, a judgment against the railway company, and decreed priority of such judgment over the mortgage claim of the trust company. The judgment and decree were rendered on an order overruling separate demurrers of the appellants to the amended cross-complaint of the respon-

dent as intervenor.    The appellants joined in the brief,
and their separate demurrers were upon like grounds.
From the record it appears that under date of February 1,
1892, the appellant railway company executed a mortgage
to the appellant trust company to secure the payment of
a series of first mortgage bonds amounting to $300,000.
The respondent by its cross-complaint in intervention
sought a judgment against the railway company and to
have its claim decreed superior to the mortgage lien.

The claim upon which the respondent's right of action
is founded is for labor and supplies and materials furnished
the railway company between January, 1892, and August,
1893.    In its complaint respondent alleges that, after the
execution and delivery of the bonds and the execution and
delivery of the mortgage, the trust company permitted the
railway company to continue in the operation and control
of all of the property and assets embraced within the mort-
gage until the appointment of the receiver herein, viz.:
about February 1, 1896.    That, although interest coupons
became due and payable every six months after the date
of said mortgage, the trust company took no steps to en-
force collection of such interest or to enforce its mortgage
until about the 1st day of February, 1896.    That on or
about the 1st day of January, 1892, the railway company
commenced to operate its railway system.    That at that
time it was without any available cash or money assets, all
such cash and assets having been exhausted in construc-
tion, and the corporation had no reserve or money with
which to pay its current expenses or to operate and carry
on the business for which it had been created, all of which
was well known to the trust company.    That it applied
to the respondent and its predecessor in interest, and ob-
tained a line of credit, in consequence of which, and by
means whereof, it obtained all the articles, supplies, ma-

terials and labor mentioned in the account upon which respondent's action was based, and all of which labor, materials and supplies were needful, necessary and requisite for the operation of its road and the regular conduct of its business and for the purpose of preserving its property.

" That said several items were furnished under the agreement of the said railway company, that it would pay for the same out of its earnings, so soon, and whenever such earnings would permit payment therefor; and by the accommodation of the parties, that is to say, by the forbearance of the said Bellingham Bay Improvement Company [respondent] to embarrass said railway company by litigation thereon, said claims, demands and obligations . . . . were carried by the said Bellingham Bay Improvement Company; and the said railway company never at any time became able to pay the same out of its receipts, but was so conducted, and its affairs so managed, that between the times of its beginning operations and the appointing of the receiver, its expenses were in excess of its receipts, and its debts greater than its ability to pay from its ordinary receipts; . . . That from the time of the execution of the said mortgage to the trustee aforesaid, and up to and on or about the first day of January, 1893, the said Fairhaven and New Whatcom Railway Company conducted its business at a loss, and its receipts were not sufficient to meet the actual operating expenses of said corporation; and said Fairhaven and New Whatcom Railway Company became indebted for its general operating expenses in a large amount, to-wit, twelve thousand dollars ($12,000), for the general operating purposes of said corporation; that since said date said road has been more than paying the operating expenses, and up to the time of the appointment of the receiver as hereinbefore stated, the excess of the receipts over the amount necessary and requisite to pay the general operating expenses of said road were used by the officers of said company in paying and discharging the bills and obligations contracted for operating expenses prior to the first day of January, 1893; and said indebtedness so contracted for the operating expenses has

been reduced in a large sum, to-wit: Seven thousand dollars ($7,000); and if the said receiver had not been appointed, the general receipts of the said company would have been ample to have paid your intervenor for all bills contracted and mentioned and described in Exhibit 'A,' and would soon have been able to have been paid."

That no portion of the account had been paid excepting the sum of $112.54, paid on June 1, 1895.

1. The first ground of demurrer is that "the action of the said intervenor for the relief therein sought has not been commenced within the time limited by law." As already noticed, the first items of the account were furnished in January, 1892, and the last in August, 1893. We think that, by reason of the contract of the parties already noticed, the different items composing the account constituted a single legal demand and cause of action at the time when the payment of $112.54 was made on June 1, 1895, and the bar of the statute was not complete at the time when such payment was made, and thereafter respondent's action was prosecuted within the time allowed by the statute. There was, therefore, no error in overruling the demurrer upon that ground.

2. In support of its general demurrer appellant urges that, even if the claim is not barred by the statute of limitations, respondent has lost by laches any equity for preference over the mortgage debt. We think it is correctly stated that the *length of delay* in asserting one's rights which will amount to laches, is not subject to fixed rule, but is largely dependent upon circumstances. The usual course of the company in the conduct of its affairs, its financial circumstances and ability to make payment, as well as the course of dealing between the parties, must be considered in determining to what extent credit for claims of this character may be permitted to run back. In *Hale v. Frost*, 99 U. S. 389, the supreme court of the United States gave priority

to a claim for material furnished three years before the appointment of a receiver. In *Burnham v. Bowen*, 111 U. S. 776 (4 Sup. Ct. 675), the same court gave preference to a claim for supplies furnished more than eleven months prior to the appointment of a receiver, and in *Farmers' Loan & Trust Co. v. Kansas City, W. & N. W. R. Co.*, 53 Fed. 182, it is said:

" There is no fixed rule barring preferential debts contracted more than six months before the appointment of the receiver. There is no ' six months' rule.' "

And the court further says that what length of time will bar them is not clear upon the authorities " and depends largely upon the circumstances of each particular case." Upon principle, it would seem but just that a party should, in the absence of special circumstances of controlling importance, be entitled to equitable relief for the full period in which, according to the statute, an action might be maintained at law to enforce the demand. If the lapse of three years is necessary under the statute to bar the debt, there appears to be no sufficient reason, generally speaking, why the equitable right should be barred within a shorter period.

3. The final contention of appellants is that the items of the respondent's claim are not such as to entitle it to a preference over the mortgage. In this connection they urge that there has been no diversion of the income of the road to the benefit of the mortgage security, and as to a part of the claim they further urge that it was for materials used in the construction and not in the operation of the road. We think that appellants are mistaken as to the character of the materials and supplies which they assume were furnished to be used in construction rather than in the operation of the road, and deem it unnecessary to pursue this phase of the objection further.

In *Fosdick v. Schall*, 99 U. S. 235, the supreme court of the United States says:

" The income out of which the mortgage is to be paid is the net income obtained by deducting from the gross earnings what is required for necessary operating and managing expenses, proper equipment, and useful improvements. Every railroad mortgagee in accepting his security impliedly agrees that the current debts made in the ordinary course of business shall be paid from the current receipts before he has any claim upon the income."

And in the later case of *Union Trust Co. v. Souther*, 107 U. S. 594 (2 Sup. Ct. 297), the same court, after quoting so much of the opinion in *Fosdick v. Schall* as is above set out, say:

" To this we adhere, and, in our opinion, the right to impose terms *does not depend alone on whether current earnings have been used to pay the mortgage debt, principle or interest, instead of current expenses.* . . . Many other circumstances may make such an order reasonable, and this case furnishes a striking example. The first default in the payment of interest under the mortgage occurred in October, 1873. The bondholders did not see fit to take possession, as they had the right to do, when the default had continued for six months. On the contrary, notwithstanding no payments of interest had been made, they allowed the company to operate the road and incur obligations therefor until December, 1877. This was evidently in the hope that their condition would be improved by the delay; for to effect the forbearance they established an agency and incurred expenses to an amount much larger than the $3,000 reimbursed by the company. Prior to the appointment of the receiver the gross earnings do not appear to have been enough to pay expenses, but afterwards they yielded a very considerable surplus. There cannot be a doubt that it was for the interest of the bondholders that the road should be kept in operation, and as they did not see fit to take possession while it could only be operated at a loss, it was certainly not an abuse of ju-

dicial discretion for the court to order, as a condition of granting their application for a receiver, that debts incurred by the company in thus protecting the security should be paid from the income of the receivership, if, in consequence of an increase of revenue, it could be done."

And in *Miltenberger v. Logansport Ry. Co.*, 106 U. S. 286 (1 Sup. Ct. 140), the court say:

" Many circumstances may exist which may make it necessary and indispensable to the business of the road and the preservation of the property, for the receiver to pay pre-existing debts of certain classes, out of the earnings of the receivership, or even the *corpus* of the property, under the order of the court, with a priority of lien."

From the still later case of *Burnham v. Bowen, supra,* we quote the following:

" It is said, however, that as no part of the income, before the appointment of the receiver, was used to pay mortgage interest, or to put permanent improvements on the property, or to increase the equipment, there was no such diversion of the funds belonging in equity to the labor and supply creditors as to make it proper to use the income of the receivership to pay them. The debt due Bowen was incurred to keep the road running, and thus preserve the security of the bond creditors. If the trustees had taken possession under the mortgage, they would have been subjected to similar expenses to do what the company, with their consent and approbation, was doing for them. . . . So far as anything appears on the record, the failure of the company to pay the debt to Bowen was due alone to the fact that the expenses of running the road and preserving the security of the bondholders were greater than the receipts from the business. Under these circumstances, we think the debt was a charge in equity on the continuing income, as well that which came into the hands of the court after the receiver was appointed as that before. When, therefore, the court took the earnings of the receivership and applied them to the payment of the fixed charges on the railroad structures, thus increasing the se-

curity of the bondholders at the expense of the labor and
supply creditors, there was such a diversion of what is de-
nominated in *Fosdick v. Schall* the ' current debt fund,'
as to make it proper to require the mortgagees to pay it
back. So far as current expense creditors are concerned,
the court should use the income of the receivership in the
way the company would have been bound in equity and
good conscience to use it if no change in the possession had
been made."

An examination of the account, in connection with the
allegations of the complaint, shows that the entire claim
of the respondent is for labor, materials and supplies, all
of which were indispensable to the business of the road,
conserving its property, preserving the franchise and pro-
tecting the interests of the mortgage creditors and all oth-
ers interested in the railway property. We think a fair
construction of the pleading is sufficient to show that the
debt was incurred as a part of the operating expenses of the
road for supplies, etc., necessary to keep the road a " going
concern," and that such debt is entitled to be paid out of
the earnings of the receivership, and even the *corpus* of
the property is chargeable with a priority of lien. We
might further add that, if any item of the account is such
as entitles respondent to a preferred claim, then the de-
murrer was properly overruled; and in this connection we
notice that fuel was furnished by the respondent, amount-
ing to $167.91, the complaint alleging that said fuel " was
furnished to enable the said corporation to generate heat
and steam to supply the motive power for the said railway
company and if the same or other fuel to a like amount had
not been obtained by it, the said corporation would not
have been able to have continued the operation of its said
line of street railway." It would seem to require no argu-
ment to demonstrate that this was a preferential debt equit-
ably entitling the respondent to a preferred lien.

Our conclusion is that the demurrers were properly overruled and the judgment and decree will be affirmed.

SCOTT, C. J., and ANDERS, REAVIS and DUNBAR, JJ., concur.