## DOLPH ET AL. *v.* CINCINNATI, BLUFFTON AND CHICAGO RAILROAD COMPANY.

[No. 8,670. Filed November 5, 1913. Rehearing denied March 13, 1914. Transfer denied April 23, 1914.]

1. RECEIVERS.—*Priority of Claims.—Attorney's Fees.*—Where pursuant to authority contained in the mortgage securing railroad bonds, the bondholders, stockholders and the holders of a large number of unsecured claims entered into a contract appointing a committee to take over from the receiver the control and management of the road, which contract empowered the committee to do any act or thing in relation to any claim or demand that could be done by the claimant individually in any litigation, etc., such committee had authority to employ counsel to assist it in the performance of its duties, and to burden the *corpus* and

proceeds of the property with a lien for the services of such counsel prior to the lien of the mortgage bonds.  pp. 138, 141.

2.  TRUSTS.—*Powers of Trustees.—Creation of Liens.*—A trustee may employ counsel to assist in the management of his trust and burden the estate with a lien.  p. 140.

3.  RECEIVERS.—*Priority of Claims.—Attorney's Fees.*—Where, pending the management and control of a railroad by a reorganization committee, such committee made large expenditures in building an extension of the road, attorneys employed by such committee . in connection with such work were entitled to be paid a reasonable compensation for their services from the proceeds of the sale of the road, regardless of whether they were entitled to priority over the mortgage bondholders for other services rendered by them to the committee.  p. 141.

From Huntington Circuit Court; *Samuel E. Cook,* Judge.

Receivership proceeding against the Cincinnati, Bluffton and Chicago Railroad Company.  From a judgment denying their claims priority over the claims of bondholders, Fred A. Dolph and others appeal.  *Reversed.*

*William J. Henley, Frederick E. Matson* and *Edward E. Gates,* for appellants.

*Lesh & Lesh,* for appellee.

SHEA, J.—The record in this case presents but one question for our consideration and that is the priority of certain liens as fixed by the court in a receivership.

The facts in this case necessary for a proper understanding of the question presented, are as follows:  Some time prior to 1905, appellee, railroad company, had defaulted in the payment of the interest on its bonds, and had outstanding a large indebtedness which it was unable to meet, and a receiver was appointed by the Jay Circuit Court.  In the latter part of the year 1905, the bondholders, stockholders and the holders of a large number of unsecured claims entered into a contract appointing a committee of five members to take over the control and management of the road, and take the same out of the hands of the receiver appointed by the court, which contract provided that all the stockholders, claimholders and bondhold-

ers should pool their claims and place them in the hands of the committee, and authorized the committee to take possession of the road and do all things necessary for the management of the same, and the committee was authorized and given full power to act for all the parties interested, the same as the parties themselves might have done in person. The committee continued to manage the road for a period of about two years, and during the time it had charge of the same, employed appellants to render legal services for them and in their behalf. On March 13, 1908, the circuit court of Huntington County appointed a receiver for the railroad company, and appellants continued to act as attorneys for the receiver so appointed.

There is no question as to the legality of the agreement entered into by the bondholders, claimholders, lienholders and the railroad company, and no question presented in relation to the right of the committee of five to employ counsel to assist them in the duties of the trust, or the value of the services rendered by appellants.

Section 1, Art. 5 of the mortgage provides that the holders of two-thirds of the bonds for the time being outstanding, shall have power by instrument in writing to "assent to and authorize any modification or compromise of the rights of the bondholders and of the trustees against the railroad company, or against any property subject to this indenture", and that such action "shall be binding upon the holders of all the bonds hereby secured", etc. It is found by the court in finding No. 25 that the reorganization committee came into possession of 817 of 834 bonds outstanding at the time the agreement was entered into, appointing the committee. It is conceded, or at least it is not denied, that the committee was empowered to employ appellants in the management of the trust, and it is so found by the court. Neither is it denied that the services rendered for appellee were of the value claimed, and the court so finds.

The only question for our decision is Should appellants

be paid for their services out of the fund derived from the sale of the road before distribution to the bondholders? The court in its conclusion of law No. 4 fixed the priority of claims, dividing them into six classes, ''A'' to ''F,'' inclusive, as follows: Class ''A'' consists of tax claims held by county officers, or by persons who have paid taxes owing by the railroad. Class ''B'' consists of claims for labor, material, supplies and other current expenses of the current receivership, including an item of $2,283.33 for that part of the services rendered by appellants after March 13, 1908. Class ''C'' consists of the receiver's certificate held by the Union Trust Company. Class ''D'' consists of a large number of claims which have sufficient equity to entitle them to preference over the mortgage bonds. Appellants contend that the balance of their claim, allowed by the court, and which was for services rendered under their contract of employment with the reorganization committee, amounting to $14,400 should be included in this list and should have preference over class ''E'' which consists of the mortgage bonds.

The reorganization committee was appointed by the bondholders, and the court finds that 817 of 834 bonds then outstanding were delivered to this committee, and the committee was acting for all the bondholders, and while so acting employed appellants, who rendered the services. The facts as found by the court disclose that at the time the agreement was entered into, appointing the committee, the road was in the hands of a receiver appointed by the Jay Circuit Court, and it was one of the purposes of the agreement that the management of the road was to be taken out of the court. In fact, the finding of the court is that the road was managed by this committee of five in place of the receiver theretofore appointed. It is not contended that a trustee

2. could not employ counsel to assist in the management of his trust and burden the estate with a lien. This proposition is well settled in this and other states. *Curran*

v. *Abbott* (1895), 141 Ind. 492, 497, 40 N. E. 1091, 50 Am. St. 337, and authorities cited.

In special finding No. 25 it is found that the sum of $60,-000 of the earnings of the company during the time it was managed by the reorganization committee was expended to pay for extension of the line from Bluffton to Huntington, so that upon any theory of the case the attorneys were entitled to be paid from this fund the amount to which they were found to be entitled as reasonable compensation for their services. *Burnham* v. *Bowen* (1884), 111 U. S. 776, 4 Sup. Ct. 675, 28 L. Ed. 596; *Bellingham Bay Imp. Co.* v. *Fairhaven, etc., R. Co.* (1897), 17 Wash. 371, 49 Pac. 514. We think there can be no doubt that the reorganization committee was authorized to employ counsel, and that the services of counsel were essential to keep the road a going concern, and the bondholders, together with the creditors and stockholders having entered into the agreement as above set out, are now estopped to deny priority of the claim of the attorneys for services rendered under such .circumstances. *Scott* v. *Queen Anne's R. Co.* (1908), 162 Fed. 828, 834, 89 C. C. A. 536; *Blair* v. *St. Louis, etc., R. Co.* (1885), 22 Fed. 769, 770, 771; *Miltenberger* v. *Logansport, etc., R. Co.* (1882), 106 U. S. 286, 307, 1 Sup. Ct. 140, 27 L. Ed. 117; *Burnham* v. *Bowen, supra; Bellingham Bay Imp. Co.* v. *Fairhaven, etc., R. Co., supra; Buckley* v. *Union Canal Co.* (1858), 3 Phil. (Pa.) 152; 15 Leg. Int. (Pa.) 212; *Douglass, etc.,* v. *Cline* (1877), 75 Ky. (12 Bush.) 608, 626. It follows that if the committee had power to employ attorneys then this power would necessarily imply that it could burden the *corpus* and proceeds of the property with a lien for such services, prior to the lien of the mortgage bonds. But aside from the implied authority of the committee, they were empowered by §4 of the contract to "do any act or thing in relation to any claim or demand represented by them that could be done by the claimant individually in any litigation in

which such claim or any of them are or may become involved, including the right to make any and all stipulations or agreements in or out of court in reference to the same, and to bring any and all litigation pending or to be pending in relation to the same, and said committee shall have full power to institute and prosecute any suit or proceeding to contest any claim which may in its judgment affect the rights of the parties to this agreement and to defend any suit or proceedings which shall affect in its judgment the rights of the signers  *  *  *  and to do any other act or thing in relation to any controversy, litigation, suit or proceeding which it may deem expedient.'' This provision of the contract on the part of the bondholders authorized the committee to employ counsel, and it is not controverted here that they had such power, and the court approves the claim as a valid charge against the estate. This could only be by reason of the authority of the committee to contract the debt, and if it had power to contract the debt, then it should be paid out of and deducted from the funds derived from the sale of the property, before distribution to the bondholders, and the court was in error in not so holding.

The judgment is reversed with instructions to the court below to restate its conclusions of law, so as to place appellants' claim in class ''D,'' giving it priority over the claim of the holders of the mortgage bonds.

NOTE.—Reported in 103 N. E. 13. As to power of receiver to create liens on property for debts as of the receivership, see 83 Am. St. 75. See, also, under (1) 33 Cyc. 524; (2) 39 Cyc. 339; (3) 33 Cyc. 606.