IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| JESS ORTIZ, | ) | |
| | ) | No. 33877-1-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| INGA STERLING, | ) | |
| | ) | |
| Respondent. | ) | |

SIDDOWAY, J. — Jess Ortiz appeals the outcome of a bench trial resolving financial disputes between him and Inga Sterling, with whom he was involved romantically for six years. Each side prevailed in part. Mr. Ortiz assigns error to trial court findings as to his liability to repay Ms. Sterling for loans advanced during the relationship. Substantial evidence supports the trial court's findings, which in turn support its conclusion. We affirm.

FACTS AND PROCEDURAL BACKGROUND

During a romantic relationship between Jess Ortiz and Inga Sterling that began in 2003 and ended in 2009, Ms. Sterling advanced money to Mr. Ortiz for a variety of purposes and sometimes paid his share of their expenses for entertainment and travel. She claims Mr. Ortiz told her to keep track of the amounts and he would pay her back.

Ms. Sterling also purchased a model of vintage car that Mr. Ortiz had always wanted—a 1958 Chevrolet Impala—taking title in her name, but later agreeing to sell it

to him for $30,000 that she would accept in interest-free payments over time. Mr. Ortiz began to make monthly payments of $500, sometimes paying several installments at a time in order to pay the loan off sooner.

Mr. Ortiz dated other women during the relationship and Ms. Sterling forgave him for a time but eventually "couldn't go on." Report of Proceedings (RP) at 277. The couple ended their relationship sometime in 2009. In July 2009, Mr. Ortiz moved to Yuma, Arizona.

Believing he had fully paid for the Impala, Mr. Ortiz communicated with Ms. Sterling about obtaining the car and title, and on a number of occasions, Ms. Sterling said she would bring it to him. When she failed to do so by November 12, 2010, Mr. Ortiz commenced the lawsuit below, seeking specific performance of their agreement. In answering, Ms. Sterling denied he had purchased the Impala. She counterclaimed that she had loaned him almost $46,000, over $8,500 of which remained unpaid. In response to the counterclaim, Mr. Ortiz asserted he had repaid everything he had borrowed from Ms. Sterling and also asserted the affirmative defenses of the statute of limitations and the statute of frauds.

At a two-and-a-half day bench trial, the trial court heard extensive testimony from the two parties. Both agreed that Mr. Ortiz had paid Ms. Sterling a total of $42,616. Mr. Ortiz characterized the amount as payment in full for the $30,000 Impala and more than full payment of another $11,616 he had borrowed from Ms. Sterling. He characterized

2

the $1,000 additional as "show[ing] my appreciation for what she'd done for me." RP at 71. Ms. Sterling testified that Mr. Ortiz had owed her $68,450 in total, with $25,834 remaining outstanding.

In a letter ruling shortly after trial, the trial court characterized the facts as convoluted and hotly contested, observed that both parties had "significant credibility problems," and stated that it did not "wholly believe either party" and distrusted the "accuracy of their evidence in almost every respect." Clerk's Papers (CP) at 25. It found, however, that Ms. Sterling had agreed to sell the Impala to Mr. Ortiz and that Mr. Ortiz had paid the full $30,000 purchase price. It found that a number of the expenses paid by Ms. Sterling that she claimed were agreed loans were instead gifts, using Ms. Sterling's exhibit itemizing "Summary of Monies Loaned to Jess" to identify the gifts. CP at 28-29 (some capitalization omitted). In written findings entered thereafter, it found that Mr. Ortiz paid $12,616 over and above the $30,000 he owed for the car, falling short by $19,572 of the amount he owed.

On the issue of the statute of limitations, the court accepted Ms. Sterling's argument that because Mr. Ortiz's last payment was made on August 1, 2009, Ms. Sterling's cause of action as to all of the true loans accrued on that date, with the result that the limitations period had not run when litigation commenced in November 2010. Responding to Mr. Ortiz's argument that each loan was an individualized transaction, the court observed,

3

No. 33877-1-III
*Ortiz v. Sterling*

> [I]t is clear from [Mr. Ortiz's] note . . . accompanying the last payment, and his testimony, that he was aware that he was paying on a total debt which had accrued over a period of time and that he was uncertain as to the amount. Consequently, the August 1, 2009, payment, which [the court believes] was intended by [Mr. Ortiz] to be a payment on the total loaned amount and not on any other claimed indebtedness, was the date of accrual for [Ms. Sterling's] cause of action for repayment.

CP at 26.

Mr. Ortiz appeals.

## ANALYSIS

Following a bench trial, appellate review is limited to determining whether substantial evidence supports the trial court's findings of fact and, if so, whether the findings support the conclusions of law. *State v. Stevenson*, 128 Wn. App. 179, 193, 114 P.3d 699 (2005). "Substantial evidence" is evidence sufficient to persuade a fair-minded person of the truth of the asserted premise. *Id.* The trial court's resolution of witness's differing accounts of events are entitled to great deference. *State v. Harrington*, 167 Wn.2d 656, 662, 222 P.3d 92 (2009). We treat unchallenged findings of facts supported by substantial evidence as verities on appeal. *Schmidt v. Cornerstone Invs., Inc.*, 115 Wn.2d 148, 169, 795 P.2d 1143 (1990). We review challenges to a trial court's conclusions of law de novo. *State v. Gatewood*, 163 Wn.2d 534, 539, 182 P.3d 426 (2008).

Mr. Ortiz's first challenge to a finding is readily dismissed. He contends the evidence supported an agreed purchase price for the Impala of $30,000, not $35,000 as

4

found by the court. But the operative court finding—finding 2.7 of the trial court's amended findings of fact and conclusions of law—is that "there was an agreement by the Defendant to sell the vehicle to the Plaintiff for the sum of $30,000." CP at 60. Mr. Ortiz mistakenly relies on an initial set of findings that was later corrected.

Mr. Ortiz next argues the court erred in concluding that the statute of limitations had not run on any of the amount loaned. The parties agree that the applicable limitations period on an oral loan agreement is the three-year period provided by RCW 4.16.080(3). There is no dispute between them that where no time or period for repayment is agreed, a loan is payable on demand. *Nilson v. Castle Rock School Dist.*, 88 Wn. App. 627, 630, 945 P.2d 765 (1997). "Absent other facts," the cause of action on a demand loan accrues on the date when the loan is made." *Id.*[1]

Nonetheless, a "partial payment" statute, RCW 4.16.270, provides that a payment on a loan after it has become due resets the statute of limitations clock:

> When any payment of principal or interest has been or shall be made upon any existing contract, whether it be a bill of exchange, promissory note, bond or other evidence of indebtedness, if such payment be made after the same shall have become due, the limitation shall commence from the time the last payment was made.

---

[1] An exception exists "when, at the time of contracting, the parties contemplated delay in making the demand and where 'speedy demand would violate the spirit of the contract.'" *Nilson*, 88 Wn. App. at 630 (quoting *Barer v. Goldberg*, 20 Wn. App. 472, 476, 582 P.2d 868 (1978). If actual notice or demand is required, then the statute of limitations begins to run when notice is given, demand is made, or a reasonable time has elapsed. *Hopper v. Hemphill*, 19 Wn. App. 334, 335, 575 P.2d 746 (1978).

5

RCW 4.16.270; *see also* 15A KARL B. TEGLAND & DOUGLAS J. ENDE, WASHINGTON
PRACTICE SERIES: HANDBOOK CIVIL PROCEDURE § 4.13(c) (2016).

Mr. Ortiz argues to us, as he did to the trial court, that all of his payments made up
to and including one on October 7, 2008—at which point he had paid $30,000—were
solely for the Impala. Since nothing had been paid on the loans made between 2003 and
October 7, 2005, he contends the statute of limitations on all of those loans had run.
Although he continued making payments on what he believed he owed, he argues that
those payments were only on the non-time-barred loans, not the time-barred loans. If
only the post-October 7, 2005 non-time-barred loans are taken into consideration, he
argues, he more than repaid them with amounts paid after October 7, 2008.

A trial court's memorandum decision may be considered in interpreting its
findings of fact and conclusions of law. *State v. Budd*, 186 Wn. App. 184, 197, 347 P.3d
49 (2015) *aff'd*, 185 Wn.2d 566, 374 P.3d 137 (2016). From the court's letter decision,
we know that it rejected Mr. Ortiz's theory that his payments were all applied first to the
Impala and then to individual non-time-barred loans rather than to a total loaned amount.
Rather, the court found, "[I]t is clear from the Plaintiff's note [Exhibit 25] accompanying
the last payment, and his testimony, that he was aware that he was paying on a total debt
which had accrued over a period of time and that he was uncertain as to the amount."

CP at 26 (alteration in original).[2]

In *Bellingham Bay Improvement Co. v. Fairhaven & New Whatcom Railway Co.*, 17 Wash. 371, 373, 49 P. 514 (1897), the plaintiff sought repayment for labor, supplies, and materials furnished to the defendant between January 1892 and August 1893. It took no action to collect until February 1896. *Id.* At that time, the only portion of the account that had been paid was $112.54, paid on June 1, 1895. *Id.* at 375. The defendant contended the action was time-barred. Applying the logic advanced by Mr. Ortiz in this case, it *would* have been time-barred as to advances made before June 1, 1892, if we assume that the payment made on June 1, 1895, was to be applied only to non-time-barred amounts (liabilities incurred *after* June 1, 1892), and not to time-barred amounts (liabilities incurred *before* that date). Yet the court said,

> We think that, by reason of the contract of the parties already noticed, the different items composing the account constituted a single legal demand and cause of action at the time when the payment of $112.54 was made on June 1, 1895, and the bar of the statute was not complete at the time when such payment was made, and thereafter respondent's action was prosecuted within the time allowed by the statute.

*Id.* This is consistent with the trial court's reasoning here, treating the ongoing payments as tolling any limitation period that might otherwise have applied to older advances.

In addition, when a debtor owes on several debts with the same creditor, it is well

---

[2] His note stated, "I'm sorry that it took me so long to send this to you but like I said before that things around here have left me scattered brain [sic]. If there is anything else I owe you please let me know[,] ok." Ex. 25.

No. 33877-1-III
*Ortiz v. Sterling*

established that, at the time of payment, if the debtor does not give specific direction as to how the payment is to be applied or allocated among those debts, "the right belongs to the creditor until the account is settled or suit is brought." *Yancovich v. Cavanaugh Lumber Co.*, 20 Wn. App. 347, 349-50, 581 P.2d 1057 (1978); *Oakes Logging, Inc. v. Green Crow, Inc.*, 66 Wn. App. 598, 602, 832 P.2d 894 (1992). Finally, "[i]f a debtor gives no direction and the creditor makes no timely application to any particular [debt], the law will apply any payments to the oldest accounts." *Yancovich*, 20 Wn. App. at 350 (oldest debts credited first where debtor had several open accounts with creditor).

For several reasons, then, the trial court could treat Mr. Ortiz's entire remaining obligation as due and payable.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Korsmo, J.

_____
Fearing, C.J.

8