[Civil No. 4686. Filed June 19, 1945.]

[159 Pac. (2d) 612.]

VINSON & PRINGLE, a Co-partnership Consisting of L. G. VINSON and BERT PRINGLE, Appellants, v. LANTEEN MEDICAL LABORATORIES, a Corporation, Appellee.

Messrs. Sloan, Scott & Green, for Appellants.

Messrs. Rawlins & Rawlins and Mr. William G. Christy, for Appellee.

STANFORD, C. J.—The appellants herein were the plaintiffs in the trial court, and we shall term the appellants the plaintiffs and the appellee, defendant.

Plaintiffs received a judgment in the superior court of Cochise County, where the case was tried before the court without a jury, for the sum of $2,425.54. Plaintiffs' complaint asked for $3,871.84, being for labor, equipment and material furnished defendant, plus 15%, for guniting a reservoir on the ranch of defendant near Hereford in the southern part of Arizona.

The main guide of the trial court, and of this court, was, and is the following letter which we think very important to quote in toto:

"P. O. Box 930
"Phoenix, Arizona.
"June 29, 1942.
"Lanteen Arabian Foundation,
"Hereford, Arizona
"Attention: Mr. Donald Coyle.
"Dear Sir:
"In answer to your letter of June 25, our Gunite Foreman will contact you within the next few days regarding reservoir.

"As outlined in our conversation by telephone, we propose to do this work for you immediately after guniting the reservoir at Fort Huachuca.

"We propose to furnish the necessary equipment, foreman, nozzle men and gunite men, to do this work on force account basis, cost plus 15%.

"We will furnish you rental prices and prices of employees on separate sheet.

"Mr. Criner, our foreman will talk to you about details on the job and if necessary, we can furnish sand and cement. I rather think it would be to your advantage to furnish sand, cement and also labor if they are available in the vicinity (However, if necessary, we can furnish both labor and material.)

"Mr. Criner will talk this over with you within the next few days and can give you the exact time we will be on the job as we are waiting for the Army at Fort Huachuca to prepare the reservoir and gunite work. As soon as we determine the time, we will be in your vicinity with gunite crew and will notify you.

"Very truly yours,

"Vinson and Pringle
"Bert M. Pringle."

The separate sheet referred to in the letter is as follows:

"Listing of employees and equipment proposed to be used on Gunite Work.

| | |
|---|---|
| 1—Foreman | $17.00 Per Day. |
| 1—Nozzleman | $14.00 Per Day. |
| 1—Gunman | $12.00 Per Day. |
| 1—Truck Driver | $12.00 Per Day. |
| 1—315 C. F. Compressor | $10.00 Per Day. |

| | |
|---|---|
| 1—Tinplex Pump | $ 5.00 Per Day. |
| 1—Gun & Hose | $10.00 Per Day. |
| 1—6 Ton GMC Flatbed | $15.00 Per Day. |
| 1—Chev. Pickup #37 | $ 6.00 Per Day. |
| 1—Cement Mixer (Mounted) | $15.00 Per Day. |
| (Unmounted) | $ 9.00 Per Day. |

"NOTE:

"Gas, Oil and Grease as well as drivers and equipment operators are not included in above figures and therefore will be an extra charge.

"Cost and time for moving equipment to the job from our Yards and cost and time for moving equipment back to our yard will be charged at the above rates.

"All operations will be based on the above figures at cost plus 15%."

Besides letters, there were telephone calls and other conversations, in particular between the foremen of the respective parties.

The complaint is based on the following statement of services rendered, equipment furnished and other things:

| | | | Amount | Totals |
|---|---|---|---|---|
| Labor: | Week ending | 7/18/42 | 113.50 | |
| " | " | 7/25/42 | 379.50 | |
| " | " | 8/ 1/42 | 354.15 | |
| " | " | 8/ 8/42 | 329.45 | |
| Total Labor ......................................... | | | | 1,176.60 |
| Hal Criner (Expenses Paid in Cash) | | | 11.62 | |
| Southern Pacific Co. (Demurrage on Cement) | | | 2.20 | |
| California Portland Cement Co. (Cement) | | | 710.00 | |
| Guardian Insurance Agency (P. L. & P. O. Ins. on labor) | | | 5.81 | |
| Arizona Industrial Commission (Comp. Ins. on labor) | | | 94.13 | |
| S. S. Tax of 1% on labor | | | 11.77 | |
| Unemp. Tax of 3% on labor | | | 35.30 | |
| So. Arizona Auto Co. (Tr. Rep. on Job) | | | 18.31 | |
| Gas, Oil & Grease (Standard Oil Co. & Texaco Co.) | | | 164.34 | |
| Western Auto Supply Co. (Repairs) | | | 14.04 | |
| Total Materials & Ins. ............................. | | | | 1,067.52 |

Rent Pickup No. 37
  21 days @ $6.00 per day     126.00
" Chev. Flat No. 14
  1 day @ $10.00 per day      10.00
" GMC 6 Ton No. 59
  21 days @ $15.00 per day     315.00
" Compressor No. 4
  21 days @ $10.00 per day     210.00
" Gun & Equipment #1
  21 days @ $10.00 per day     210.00
" Pump No. 7
  21 days @ $5.00 per day     105.00
" Mixer—11 days @ $15.00 per day  165.00

    Total Equipment Rentals........................ 1,141.00
    Grand Total ................................... 3,385.12
    Plus 15% ..................................... 507.77

                 $3,892.89

   We first give our attention to the items of Guardian Insurance Agency (P. L. & P. O. Ins. on labor) $5.81; Arizona Industrial Commission (Comp. Ins. on labor) $94.13; S. S. Tax of 1% on labor $11.77; and Unemp. Tax of 3% on labor $35.30; So. Arizona Auto Co. (Tr. Rep. on Job) $18.31; Western Auto Supply Co. (Repairs) $14.04. According to the briefs all of these items were disallowed by the trial court, the disallowance of which is assigned by plaintiff as error.

Not only were these items left out of the contract as being a charge, but we think they are not a proper charge in a cost plus contract unless specifically mentioned.

Plaintiffs submit the case of *Citizens State Bank of Long Beach* v. *Gentry*, 20 Cal. App. (2d) 415, 67 Pac. (2d) 364, 367, from which we quote:

  " . . . In this connection, and also with reference to appellant's claim that the trial court erred in allowing as charges against the construction cost, premiums incurred for compensation and liability insurance, it may be said that all the items concerning equipment, as well as insurance premiums, were included in weekly

statements furnished appellant by respondent contractor, and she paid the said charges knowingly and without any fraudulent concealment on the part of the contractor. It seems to us that when these weekly statements were furnished to appellant, if there was any doubt about the charges for equipment and insurance premiums, appellant should have demanded an explanation of the same before she paid them."

We do not think that this case applies. As it will be seen, it is based on weekly statements that were rendered and were not objected to.

The defendant presents the case of *Advance Auto Body Works* v. *Asbury Transp. Co.,* 10 Cal. App. (2d) 619, 52 Pac. (2d) 958, 959, out of which case we quote:

" . . . 'Unless expressly written into the contract by defining exactly the overhead intended to be covered, the words "time and material," and like expressions, will not include overhead charges, but refer solely to the wages and salaries of the men engaged in the particular work contracted for and the actual cost of the materials furnished. The words will not be extended beyond their exact meaning, and indeed they should be given a restricted meaning. At least they should be considered in the sense in which they are popularly understood. One thus contracting engages to furnish and keep in condition the tools and necessary equipment to do the work.' "

Black's Law Dictionary defines "overhead" as follows:

"All administrative or executive costs incident to the management, supervision, or conduct of the capital outlay, or business;—distinguished from 'operating charges,' or those items which are inseparably connected with the productive end and may be seen as the work progresses, and are the subject of knowledge from observation."

This definition does not strictly include the items that are referred to above and disallowed by the trial court, but throughout the case we find some bearing on such items.

From the case of *Lytle, Campbell & Co.* v. *Somers, Fitler & Todd Co.,* 276 Pa. 409, 120 Atl. 409, 411, 27 A. L. R. 41, we quote the following:

"The term 'overhead'—including the salaries of executive or administrative officials, interest charges for floating bonds, carrying charges, depreciation, taxes, and the general office expenses as here claimed —cannot be allowed as an operating charge in 'cost plus' contracts. To do so would open the doors to a flood of obligations not intended by the innocent words used in a contract such as the one before us. The term 'time and material basis' was intended to include the necessary cost of operation affecting the particular undertaking, the cost of labor and materials that went into and became part of the finished product; each outlay thus expended must be included. To this there was to be added a profit of 10 per cent. This latter item was intended to take care of that proportionate share of overhead charges included in the company's 'overhead,' or general expense, discussed above, as this contract related to plaintiff's general contracts, and, unless expressly written into the contract by defining exactly the overhead intended to be covered, the words 'time and material,' and like expressions, will not include overhead charges, but refer solely to the wages and salaries of the men engaged in the particular work contracted for and the actual cost of the materials furnished. The words will not be extended beyond their exact meaning, and indeed they should be given a restricted meaning. At least they should be considered in the sense in which they are popularly understood. One thus contracting engages to furnish and keep in condition the tools and necessary equipment to do the work."

■ It is the contention of the defendant that the place from which the equipment was to be taken and returned was Fort Huachuca in the general vicinity of the ranch in question. However, the contract, or letter, dated at Phoenix, strictly states, "Cost and time for moving equipment to the job from our Yards and cost and time for moving equipment back to our

yard will be charged at the above rates." We find from the testimony of the foreman of the defendant, Mr. Coyle, and the contract that there is really no need for misunderstanding about the place from which the equipment was to be taken and returned. Mr. Coyle, for defendant, testified as follows:

"A. When I first found out that it would be necessary to line the reservoir I made inquiries locally as to what was necessary to be done. I contacted James Maffeo, who is a local contractor here, and asked him if he could undertake the job. He came up and looked at it and said it was more of a job than his equipment could handle and he suggested the firm of Vinson and Pringle of Phoenix as being a reasonable firm in this line, and he said they were doing some work at Fort Huachuca at the time and they had an office out there and it might be well to go out there and contact them before they finished the job. So at my first opportunity I drove out there but when I got there I discovered that the work that they were on there had been finished and they had moved their equipment back to Phoenix; they no longer had an office or place where they could be located at the Fort."

" . . . so when Mr. Criner and I went up and looked over the reservoir, among other things I asked him how long it would take to do the job and he told me four days. This was on the supposition that the reservoir was ready to be gunited. . . ."

The cement mixer was secured from a construction firm at Fort Huachuca but returned to Phoenix, and for which only eleven days were charged.

A further controversy between the parties regards the number of days consumed for labor and equipment. The original estimate for labor charges was high and was reduced by plaintiffs as follows: Foreman $12.50 per day, Nozzleman $12.50 per day, Gunman $8 per day, truck driver $8 per day.

When they arrived at the reservoir with their men and equipment, the reservoir was not in shape to commence work; much water, snow and mud had to be

removed, and besides the original estimate by plaintiffs many days were consumed at the defendants' request adding common laborers to place the reservoir in shape for the commencement of plaintiffs' work, and plaintiffs have charged for all the time consumed by both labor and equipment.

In respect to time consumed, Mr. Coyle, foreman for defendant, testified that when Mr. Criner was first sent down to look over the project, he estimated that it would be a four or five day job to do the guniting. As to the time when Criner returned with men and equipment, Criner testified as follows:

"Q. When you got to the job, what did you find? A. Well, I was under the impression that the job would be ready for us to start putting in the mesh. I was told—

"Mr. Scott: Very well. What did you find, was it ready? A. No, it wasn't ready for the work we proposed to start doing.

"Q. Did you speak to Mr. Coyle? A. Yes sir.

"Q. What did he say? A. Well, I told him it was going to draw out time on the job by not being ready for us to go on, that was our ruling, and he said that is correct.

"The Court: What did Mr. Coyle state? A. When I told him the reservoir not being ready for us to put the mesh on it would draw out the time on the job and make the cost run up, and Mr. Coyles told me they figure they had better get us there while they could and get the job done."

■ We find the time actually claimed by plaintiff in his statement for labor performed and equipment used should be allowed. According to the evidence, when the foreman and his crew of men arrived to do the work, the reservoir was not ready, and they were required to do work that they were not taken down there to do. The distance from Phoenix is approximately 230 miles, and it seemed to be favorable to the foreman for the defendant that, since the men were

there, they should go to work and put the reservoir in shape to be gunited. At least they went to work and labored all the time and there was no protest.

■■ Also, as to the equipment this court finds that when equipment is taken out on a cost plus job, if it should remain idle through no fault of the contractor, payment should be made. This we say, notwithstanding the testimony that was introduced relative to custom, for the contract says, ''We propose to furnish the necessary equipment, foremen, nozzlemen and gunite men to do this work on force contract basis, cost plus 15%,'' and when the reservoir was found not to be in order to use the equipment, thereby causing it to be idle without fault on the part of the contractor, the plaintiff herein, he should nevertheless be paid for the time his equipment was there plus, in this instance, the time when it was enroute to and from Phoenix, in keeping with the contract, which further says ''cost and time for moving equipment to the job from our yards and cost and time for moving equipment back to our yards will be charged at the above rate.''

The amount asked by the plaintiffs in their complaint was $3,892.89. We are accordingly deducting from that amount the items heretofore enumerated which are not a proper charge, leaving a balance of $3,745.88.

The judgment of the trial court is therefore modified and the case remanded with directions to enter judgment for the plaintiffs in the sum $3,745.88, with costs.

LaPRADE and MORGAN, J. J., concur.