STANDARD SURETY & CASUALTY CO. OF NEW YORK et al. v. UNITED STATES, for Use and Benefit of CAMPBELL.

No. 3205.

Circuit Court of Appeals, Tenth Circuit.

March 15, 1946.

Rehearing Denied April 26, 1946.

BRATTON, Circuit Judge, dissenting.

———◆———

Louis H. Yarrut, of New Orleans, La., and A. G. Crowe, of Oklahoma City, Okl. (Ralph H. Fishman, of New Orleans, La., and Hal Crouch and Chris L. Rhodes, both of Tulsa, Okl., on the brief), for appellants.

Claude Monnet, of Oklahoma City, Okl., for appellee.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

This was an action instituted under the Miller Act, 40 U.S.C.A. § 270b, by the United States for the use and benefit of Vic Campbell, herein referred to as Campbell, against Wm. F. Kelly Company, Inc., and the Standard Surety and Casualty Company of New York, a corporation, herein referred to wherever necessary as Kelly and Standard. The action was brought to

recover the balance claimed due for work and materials performed and furnished under sub-contracts on two construction projects, at Frederick and Altus, Oklahoma. The facts necessary to consider for determination of the questions presented, briefly are these:

Kelly was a general contractor who held a number of government contracts for the construction of various war projects throughout the southern and southeastern part of the United States. Kelly had contracts for constructions at DeRidder, Camp Polk, New Orleans Airport, Bainbridge, Georgia, and Gulfport, Mississippi.[1] Kelly also had contracts for constructions at Elgin Field, Florida, Grenada, Mississippi, Greenville, Texas, Frederick, Oklahoma, and Altus, Oklahoma.[2]

Campbell was engaged in the electrical business. Kelly subcontracted to him all the electrical requirements for all of the projects in both Groups One and Two. Both the main contracts and the subcontracts in Group One antedated in point of time similar contracts in Group Two. The subcontracts at least in Group Two were oral contracts. Both Kelly and Campbell resided in New Orleans and throughout a long period of time had had intimate and friendly business relations with each other. Kelly as principal and Standard as surety executed a bond to Campbell under the applicable provisions of the Miller Act.

About May 21, 1943, Campbell requested a payment on account. At a meeting between the parties on that date at New Orleans, Campbell's oral contracts in Group Two were discussed, and it was agreed that they should be, and they were, reduced to writing. Thereupon Kelly gave Campbell a check for $6,000. Kelly entered the check on its books as a charge to Campbell, "Miscellaneous." Campbell entered the check on his books as a general credit, but did not at that time allocate it as a payment to any particular project.

On October 3, 1944, Campbell instituted this action against Kelly as principal and Standard as surety, in the United States District Court for the Western District of Oklahoma, to recover for labor and materials furnished on the Frederick and Altus projects. While the parties were in sharp disagreement as to the amount due Campbell on these two projects, the trial court made findings of fact and entered judgment thereon, and no appeal has been taken therefrom. While five assignments of error are urged for reversal, they all present the same question, namely: how much of a balance of $3,324.51 of the $6,000 payment of May 21, 1943, should be allocated to the satisfaction of the amount found to be due by the trial court on the two projects in this suit?[3] The trial court allocated only $470.90 of this amount to the satisfaction of the judgment, while Kelly contends that $2,233.61, in addition to the $470.90, should have been so allocated.

The method in which both the debtor and the creditor entered the check on their respective books has been set out above. At the trial, Kelly, however, contended that oral directions were given by it at the time of the payment that $1,500 of the amount should be credited to the Frederick project, and $750 to the Altus project. The trial court, however, found against Kelly on this issue. The court's finding is supported by substantial evidence and is therefore binding on this court. The court's finding as to whether Campbell made a specific allocation of these funds on May 21, 1943, is not clear. We conclude, however, that the court failed to find that Campbell made a specific allocation of this sum when he received it. Such a finding would have no support in the record. Campbell testified positively on cross examination that when he received the $6,000 he made no specific allocation to any account. We think his testimony is also clear that the first specific allocation he made was about October, 1943, when he consulted his attorney who advised him that the law would allocate this fund to the oldest accounts, and he thereupon and about that time, for the first time, made a specific allocation of parts of these funds as follows:

| | |
|---|---:|
| To the Camp Polk job.......... | $ 150.00 |
| To the New Orleans base project | 470.00 |
| To the Gulfport project........ | 716.65 |
| To the Camp Bainbridge, Miss., project ..................... | 1,516.96 |
| Total ..................... | $2,853.61 |

---

[1] These contracts will be referred to as Group One.

[2] These contracts will be referred to as Group Two.

[3] $2,675.49 of the $6,000 had been allocated by the trial judge to the satisfaction of a judgment in a suit between these parties in the U. S. District Court for the Northern District of Mississippi. This allocation is not in issue here.

At that time, however, a controversy had arisen between the parties as to Campbell's work on the Gulfport and Bainbridge projects. Objection had been made by the United States Engineers' Office as far back at least as June, 1943, to some of his work. Campbell testified that he went to Bainbridge in August to inspect the work on that project. We think it is clear that he went there in response to the objections to his work by both the United States Engineers and by Kelly. Kelly challenges Campbell's right at that time to make a specific allocation of these funds.

Some question is raised as to whether the Louisiana law or the federal law controls the allocation of the fund in question. In our opinion it is not necessary to resolve this question, because in the main both laws require the same application of the payment. If there is any difference in the two laws, the federal rule is more favorable to Campbell than is the Louisiana rule, and the decision in this case will be based upon the federal rule.

Under the federal rule the debtor is entitled to direct to which one of several debts the payment is to be applied. If he fails to make such a designation, then the creditor may apply it as he wishes. If both fail to make an allocation, then the law will make the allocation. After a controversy has arisen between the parties, neither may make a designation of payment. As pointed out, neither the debtor nor the creditor made a specific designation at the time of the payment. By October, 1943, when Campbell attempted to apply the payment to specific accounts, a controversy had arisen between the parties as to the Gulfport and Bainbridge projects, and he therefore could not at that time apply any part of the fund to the payment of these two accounts.

No designation of payment having been made by either the debtor or the creditor, it was the duty of the court to designate the accounts to which these payments should be applied. The rule is sometimes loosely stated to be that the law will apply the payment to the oldest matured debt or to the oldest items of a running account. This is not a correct statement of the rule. The correct rule is stated in United States v. Kirkpatrick, 9 Wheat. 720, 737, 22 U.S. 720, 6 L.Ed. 199, where the court said: "* * * if both omit it, the law will apply the payments, according to its own notions of justice." What is meant by this is illustrated in In re American Paper Co., D.C., 255 F. 121, 124, where the court said: "When the security is the same, the state and federal rule is to apply the payment first to the oldest obligation. When the security is not the same, the rule is to apply the payment first to the obligation least secured, or whose security is most precarious."

The reason why neither of the parties is permitted to apply the payment to one of several accounts which is in dispute is that it would be inequitable by such conduct to permit one of the parties to gain an undue advantage in their controversy. By the same reasoning, it would be inequitable for a court, when it is called upon to make an application to one of several accounts, to apply it to an account which is in dispute between the parties. That would be aiding one of the parties to the detriment of the other.

In determining whether the court correctly applied the payments to the Gulfport and Camp Bainbridge projects, it is necessary to determine whether the court should consider the equities of the case as they existed at the time the payments were made or whether it should also consider any change in the status of the parties and of the accounts which had arisen since the payment was made in reaching its conclusion as to what was fair, just and equitable between the parties.

Neither of the parties to this appeal has cited any authorities on this question or has discussed it in their brief before this court. In Whetmore v. Murdock, Fed.Cas. No. 17,510, the court said that, where no application has been made, "the court * * * may at the trial apply it in such way as seems most equitable and proper." In Murdock v. Clarke, 88 Cal. 384, 26 P. 601, 603, the California Supreme Court said that the court will apply the payment in such manner as "in view of all the circumstances of the case, as is most in accordance with justice and equity, and will best protect and maintain the rights of both parties." The circumstances which the court should consider, as laid down in the Murdock decision, supra, were further discussed by the California court in London & S. F. Bank v. Parrott, 125 Cal. 472, 58 P. 164, 168, 73 Am.St.Rep. 64, where the court said: "The circumstances which are to guide the court may have arisen since the payment was made * * *." The Georgia Court of Appeals approved this

principle in Thompson v. Bank of Buckhead, 47 Ga.App. 767, 171 S.E. 465, 466, where it quoted with approval the statements in the two California cases, supra, holding that the court should consider circumstances which have arisen since the payment was made, as well as those existing at the time, in determining what was just and equitable between the parties. The court further states that: "Our courts have uniformly adopted the rule that in making application of these payments it will apply them in such a manner as is reasonable and equitable and according to its view of the intrinsic equity and justice of the case." In reaching its determination as to the manner in which the payments are to be applied, a court should take into consideration all circumstances of the case, those that existed at the time of the payment as well as those that have arisen since. Any other rule would result in inequity rather than equity when the court applied the payment, and would lend aid to one party at the expense of the other. This is most forcefully illustrated in the present case. Neither party made an application of this payment when it was made. In October, 1943, Campbell attempted to apply it to the payment of two projects that at that time were in dispute. This he was not permitted to do, because it would be inequitable for him to at that time gain an advantage in the controverted claim. But if a court of equity could at the time of trial thereafter make the same application, Campbell has lost nothing. He has still gained the advantage in the controverted matter, and the inequity which he could not perpetrate has been brought about by the act of a court of equity. It was the duty of the court to apply the payment of the balance of the $6,000 in such a way as would aid neither of the parties at the expense of the other as to an account which was in controversy between them. Had the court applied the sums which it allocated to the Gulfport and Camp Bainbridge projects to the Frederick and Altus projects, both parties would have been equally benefited, and neither would have received an advantage in their controversy over the Gulfport and Camp Bainbridge projects. As to those projects, the court would merely have left them where it found them.

We accordingly conclude that the trial court erred in applying $716.65 to the Gulfport project, and $1,516.96 to the Camp

Bainbridge project. These sums likewise should have been applied to the amount found due by the court in the Frederick and Altus projects.

The judgment of the trial court is accordingly reversed, and the cause is remanded with directions to proceed in conformity with the views expressed herein.

BRATTON, Circuit Judge, is of the opinion that the judgment should be affirmed.