CONTINENTAL CASUALTY COMPANY,
Appellant,

v.

Lana J. ROSE, Appellee.

No. 10151.

United States Court of Appeals
Tenth Circuit.

Jan. 14, 1969.

William F. Dressel, Denver, Colo. (Wesley H. Doan, of Yegge, Hall, Treece & Evans, Denver, Colo., on the brief), for appellant.

Peter Watson, of Burnett, Watson & Horan, Denver, Colo., for appellee.

Before MURRAH, Chief Judge, and HILL and SETH, Circuit Judges.

HILL, Circuit Judge.

This diversity suit was brought in the District Court for the District of Colorado to recover the proceeds of an accident insurance policy insuring, among other risks, against the loss of the sight of both eyes of the insured. Recovery was allowed and this appeal followed.

The now deceased insured, who was the husband of appellee, on October 15, 1965, purchased the accident insurance policy from appellant company. The policy provided for payment of the sum of $10,000 in the event of the loss of "sight in both eyes" resulting from injury to the insured if such loss of sight occurred within one hundred days from the date of the injury. The word "loss" as used in the policy with reference to the eyes was defined therein as "the irrecoverable loss of the entire sight thereof."

On October 24, 1965, the insured fell from a ladder at his place of employment and suffered a severe injury to his head. The injury rendered him unconscious and he remained in that condition from the time of the injury until he died on May 16, 1966. Immediately after the injury he was taken to the emergency room of a Denver hospital. The doctor who first examined him there testified that he was unconscious, his pupils were dilated and they would not react to

light. Soon thereafter another doctor performed an operation upon the right side of his head during which a "flap of skull was turned down, exposing the brain which actually was under so much pressure that it actually extruded through the incision. There was a large amount of blood which was removed; a large clot, and the brain itself was quite contused and hemorrhagic appearing." During the operation nearly all of the temporal lobe on the right side was removed in an attempt to relieve the pressure upon the brain. The limited extent of this brain surgery did not afford the doctors an opportunity to evaluate or view the occipital area of the brain. One of the attending doctors testified that at no time were the attending doctors able to determine if there was any injury to the optic globes or optic mechanical system. This doctor also testified that after the operation the eyes of the insured did react somewhat to light which indicated that the optic nerve was partially intact, but from the overall condition the doctor was unable to determine if the insured could or could not make use of his optic system. In conclusion though, the doctor testified that the insured "never indicated to me that he used it."

Two neurosurgeons examined the insured during December, 1965, which was within the one hundred days provided in the policy, and both testified at the trial. In summary, both doctors testified that they found the insured in an unconscious or semi-unconscious state, that he had suffered extensive brain damage with no hope of recovering his normal brain functions, that he could not see, and that he would not recover to the point where he could ever see.

From the foregoing undisputed facts the trial judge found, as a matter of law, that the policy of insurance was not ambiguous; that it simply provided for payment of the face amount for the irrecoverable loss of sight by accident without defining the cause of the loss of sight, except by accident. The court concluded "that because of the damage to the brain occasioned by the accident the insured was unable to see at any time from the accident until his death." We agree with the trial court.

■ Appellant argues here, as it did before the trial judge, that the language of the policy means the irrecoverable loss of the entire sight caused by damage to the optic system itself. Admittedly, the insured did not suffer any direct injury to his optic system, at least as far as the evidence shows. But, to adopt appellant's argument we would have to read into the clear language of the policy a limitation of the risk that simply is not now a part of the policy. The words "irrecoverable loss of the sight of both eyes" without further limitation mean precisely what they say, the loss of sight caused by accidental means without any further limitation.

■■ As we have many times stated, the findings of fact of the trial judge will not be disturbed unless we believe them to be clearly erroneous and without evidentiary support.[1] The findings here are supported by competent expert testimony. Further, as we have indicated, the interpretation of the material parts of the contract of insurance made by the trial judge is without question correct.

Affirmed.

1. E.g., Hill v. Field, 384 F.2d 829 (10th Cir. 1967); United States Fidelity & Guar. Co. v. Oklahoma, 383 F.2d 417 (10th Cir. 1967); Skinner v. Parnell, 257 F.2d 345 (10th Cir. 1958.)