**BUTLER PAPER COMPANY, Plaintiff-Appellant,**

v.

**BUSINESS FORMS, LTD., Defendant,**

and

**Maneke-Kinzie Printing Company, Defendant-Appellee.**

No. 181–69.

United States Court of Appeals, Tenth Circuit.

March 10, 1970.

Rehearing Denied April 21, 1970.

---

7. Allen v. United States, 164 U.S. 492, 501, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

Franklin D. Hettinger, of Boesche, McDermott & Eskridge, Tulsa, Okl., for appellant.

R. Dobie Langenkamp, Tulsa, Okl., for appellee.

Before LEWIS, HILL and HOLLO-WAY, Circuit Judges.

HILL, Circuit Judge.

This diversity action was instituted by Butler Paper against Maneke-Kinzie to recover on a guaranty in which Maneke-Kinzie agreed to guarantee payment for paper used by Business Forms and supplied by Butler Paper, and for recovery against Business Forms on its contracts of purchase. The district court concluded upon its own findings that Butler failed to tender sufficient evidence to sustain its burden of proof and accordingly held that Maneke-Kinzie was free from liability on its guaranty. This appeal followed with appellant Butler essentially arguing that the district court committed manifest error by construing the guaranty in favor of the guarantor. The finding that Business Forms is liable to Butler Paper is not appealed.

■ ■ Because the case was before the trial court without a jury, the findings entered will be set aside only on a showing of clear error.[1] The burden is upon the appellant to definitely and firmly convince us that upon the basis of the entire record, a reversible mistake has been made.[2] We thus proceed to detail the facts. Butler is a Delaware corporation with offices in Wichita, Kansas, and Dallas, Texas. In mid-1965, Butler agreed to supply Business Forms' predecessor,[3] a Bartlesville, Oklahoma, printing company, with their paper needs. The mechanics of the operation provided that Butler would ship paper to the Business Forms' warehouse and send the invoices to the Bartlesville offices. Business Forms then signed security agreements confirming that the paper was Butler's property until such time as it was used in a printing job. When Butler's paper was used a job slip was made on which was recorded the amount of paper used and the customer's name. Nothing on that slip served to correlate the paper used with the invoice under which it was delivered from Butler. Periodically a Butler employee collected the job slips from the Bartlesville plant. As the jobs were completed and the customer remitted to Business Forms, the proceeds were designated as trust funds until the appropriate accounting was made to Butler.

By November, 1965, Business Forms was in critical financial straits. A creditor's committee attempted to rectify the situation by requesting Maneke-Kinzie, a Tulsa firm, to provide management supervision. The latter consented and covenanted to guarantee obligations which matured after November 1, 1965, and which were authorized by their office. On November 12, by letter to Butler Paper 'Company, Maneke-Kinzie agreed to conditionally guarantee paper shipped to Business Forms, Limited.[4] Under this

---

1. Knauff v. Utah Constr. & Min. Co., 408 F.2d 958 (10th Cir. 1969) ; Continental Cas. Co. v. Rose, 405 F.2d 1195 (10th Cir. 1969) ; United States Fidelity & Guaranty Co. v. State of Oklahoma ex rel. Sebring, 383 F.2d 417 (10th Cir. 1967).

2. Clancy v. First Nat'l Bank of Colorado Springs, 408 F.2d 899 (10th Cir. 1969) ; Raulie v. United States, 400 F.2d 487 (10th Cir. 1968) ; Eureka-Carlisle Co. v. Rottman, 398 F.2d 1015 (10th Cir. 1968).

3. No distinction will be made in this opinion between the predecessor corporation, Commerce Printing Corporation, and its successor corporation, Business Forms, Limited, since all parties agree that the companies are identical with the liability being unaffected by the change of names.

4. During November, 1965, Butler and Maneke-Kinzie exchanged three letters. While each was important to the agreement, the "Owens letter" of November 12 is looked to by the parties as containing the essential elements of the guaranty. That letter reads as follows:

"Mr. Dick Dixon has advised me about the mechanics of your secured paper sales to Commerce Printing Corporation. In view of their condition we would prefer to have them continue the same secured buying arrangement with you but would improve your position by guaranteeing that if Commerce did not remit to you when their customer paid that we would promptly do so.

My understanding of the procedure is that Commerce would requisition paper;

arrangement Business Forms continued to order and Butler continued to ship paper to Bartlesville. Accompanying each purchase order was a Maneke-Kinzie specific letter guarantee which covered the paper shipped. After about twenty orders which conformed to the usual methods, Maneke-Kinzie changed the procedure. The new purchase orders designated Maneke-Kinzie as the purchaser and the shipping destination as the Business Forms' warehouse. There were no specific letter guarantee letters with these later purchase orders but each order contained the notation "Confirming in addition to guarantee letter" or simply "Confirming." The pithy contention of Maneke-Kinzie was that only the orders accompanied by a specific letter guarantee create liability under the November 12 guaranty and that their payments to Butler have exceeded the amounts so ordered. In concise form, Butler alleged that all the purchase orders were covered by the guaranty of November 12 and that the presence or absence of accompanying guaranty letters was of no consequence. In January, 1967, Business Forms went out of business and left Butler with an allegedly uncollectible debt of over $37,000. Of that amount appellant claims that $26,721.68 was subject to the November 12, 1965, Maneke-Kinzie guaranty.

The relevant findings of the court are these: Business Forms was liable to Butler for $37,040.30; the November 12, 1965, letter constituted a guaranty agreement; the agreement "specifically limited Maneke-Kinzie's liability with reference to the collection of accounts and the payment of the collections of certain accounts to Butler Paper Company and specifically limited the liability to default after 10-day's notice"; there was no evidence of a ten day notice; the guaranty contract obligated Butler to maintain records sufficient to indicate what was guaranteed and that Butler was required under the terms of that agreement to give Maneke-Kinzie notice of the aggregate amount owed under the guaranty. Upon these findings the trial court concluded that Butler Paper failed to sustain its burden of proof and decided that Maneke-Kinzie had not breached its contract.

■■ The guaranty agreement does not require Butler to give a ten day notice and the trial court's contrary construction is clearly erroneous. The "notice" language is unambiguous and only by an impermissible manipulation of the sentence could it be given the meaning attributed to it by the lower court. The plain, ordinary and obvious intention was to permit demand for payment only after expiration of a ten day grace period from the date of customer remittance. Since the facts tacitly admit of actual knowledge by Maneke-Kinzie regarding Business Forms' default, and inasmuch as the record is devoid of evidence showing any Maneke-Kinzie injury between the time of default and notice of the suit, the guaranty provision has had sufficient compliance as has the Oklahoma statute on notice.[5]

Mr. Steve Minor would actually issue the purchase order to you for the paper on behalf of Commerce; you would ship directly to Commerce; they would execute the Security Agreement when the paper is received; the identical procedure to notify you of the amount of paper used and to furnish you with the identity of the customer for whom it was used would be followed; upon receipt of the check from the customer payment would be immediately forwarded to you for the paper actually used. In the event that such payment was not made within ten days, this company upon notice from you would honor its guarantee and make the payment.

We would also like to continue the same procedure insofar as purchases from Butler Paper Company of Dallas are concerned.

If this arrangement will be satisfactory, please let me know and we will prepare the guarantee letter to cover the situation and will forward a guarantee letter attached to each purchase order issued over Mr. Miner's signature. If you have any suggested changes or desire to improve the mechanics in any fashion, please have no hesitancy in submitting your thoughts."

5. *See* 15 Okl.St.Ann. § 333.

■ The trial court's supplemental finding that the guaranty contract imposed an obligation on Butler to maintain records indicating which jobs were guaranteed is likewise clearly erroneous. To sustain its burden upon this finding, Butler had to tender a ledger of job orders which indicated whether payment was received, and then compare it to Business Forms' accounts receivable ledger and from that, determine the amounts guaranteed by Maneke-Kinzie. After having thoroughly perused the guaranty instrument, we conclude that it was wrong to say it required any of the aforementioned records. The agreement provided only for transmittal of security agreements, job slips and payment for the paper used. It is questionable whether good business practice would require more than a running total showing current indebtedness by Business Forms, but it is certain that the contract which governs the suit does not impose that obligation.

■■ We have studied the exhibits introduced during the trial and have given careful scrutiny to plaintiff's exhibits F–1 through F–21 and G–1 through G–36. Cumulatively these represent the purchases made from Butler between November 1, 1965, and January, 1967. There is no controversy over Maneke-Kinzie's liability on the first twenty-one orders (the F series) which were accompanied by a letter guarantee. It is the G series, which is made up of purchase orders unaccompanied by letter guarantees, that is at the heart of this suit and to which we have given particular attention. By mere observation of these last thirty-six purchase orders, it is obvious that Maneke-Kinzie intended to assume responsibility for the paper delivered, under the terms of the guaranty agreement. Thirty-three of these orders were purchases made by Maneke-Kinzie on Maneke-Kinzie order forms and signed by Maneke-Kinzie's authorized representative; two purchases were made on Business Forms order blanks which designated Maneke-Kinzie as purchaser; and another has no purchase order but has the consignee's memo which lists Maneke-Kinzie as purchaser-shipper. We think it too anamolous for Maneke-Kinzie to argue now that it has no guaranty liability on these purchases when the all too obvious intent spelled out on the face of the last thirty-six purchase orders is that Maneke-Kinzie clearly identified itself as the purchaser and deemed itself liable for the paper so ordered.

At this point the conclusion of the trial court is in obvious jeopardy. The findings and conclusions of the lower court suggest that a portion of the purchase orders were not covered by the guaranty agreement and that absent proof by Butler establishing which were guaranteed, the proof fails to support the case. We find this burden unacceptable under a proper construction of the guaranty. Both parties seem to agree that the "Owens letter" of November 12 contains the substance of the guaranty agreement between Butler and Maneke-Kinzie. The text of that agreement is susceptible to multiple interpretations and may be construed to lend support to the contentions of both parties. The first paragraph sustains the basic tenants of Butler's case, i. e., that all purchase orders were under the guaranty notwithstanding the absence of a specific letter guarantee. The concluding paragraph lends credibility to the Maneke-Kinzie argument that only if a special letter guarantee accompanied a purchase order would that invoice be guaranteed. To resolve the conflicting viewpoints we turn to Oklahoma law which explicitly holds that guaranty agreements are to be construed most strongly against the guarantor.[6] Under this rule the general tenor of the guaranty's first paragraph must control. That is, Mane-

6. Rucker v. Republic Supply Co., 415 P. 2d 951 (Okl.1966); Lamm & Co. v. Colcord, 22 Okl. 493, 98 P. 355, 19 L.R.A.,N.S., 901 (Okl.1908); cf. Fed- eral Savings & Loan Ass'n v. Bell, 146 Okl. 128, 293 P. 214 (Okl.1930); First National Bank v. Cleveland, 127 Okl. 176, 260 P. 80 (Okl.1927).

ke-Kinzie's guarantee stretched to cover the cost of paper used in all jobs for which payment had been made to Business Forms but not remitted to Butler.

■ Butler was not confined to one method of proving Maneke-Kinzie's liability. They proved the total amount of paper shipped and then, by accounting for all other uses, maintained that the paper not accounted for in their figures had to be that which was made into forms, paid for by customers, but not remitted to Butler. There appears no legal reason why this was an unacceptable method of proof. Of course, to be successful, the figures used in computing the nonguaranteed uses of Butler's paper must be established by a preponderance of the evidence. Furthermore, so long as the proof conforms to the rules of evidence, it could originate with the files of Butler, Business Forms, or Maneke-Kinzie.

■ To expedite final treatment of this case, Butler has unilaterally stipulated to several items which they earlier contested. The main unresolved transaction concerns two checks totalling $14,000. The source of dispute is in the $10,791.47 worth of paper in Business Forms' warehouse on November 1, 1965. Since it had not been used and was then subject to the security agreements, there was no debt outstanding. However, neither party contends that this paper comes within the terms of the guaranty agreement. Butler merely alleges that since neither party designated the jobs to which the $14,000 was to be applied, the court should credit it against the holdover paper. The record, however, plainly refutes appellant's premise since the General Manager of Butler's Wichita division testified in unequivocal terms that he told the Maneke-Kinzie representative that this would be applied to the guaranteed obligation of Maneke-Kinzie. Neither the terms of the guaranty nor the rule in Standard Surety & Casualty Company of New York v. United States, 154 F.2d 335, 164 A.L.R. 935 (10th Cir. 1946), as urged by appellant, permits us to credit the $14,000 payment against the unguaranteed paper.

Butler is willing to credit the guaranteed account of Maneke-Kinzie with $100,283.84. Specifically, they credit the account in the following manner: repossessed paper, $18,211.05; abandoned paper, $2,500; nonguaranteed supplies, $375.04; cash payments, $69,847.48; paper sold to customers but not paid for, $5,697.39; and $3,652.88 as bad debt charge-offs.[7] By deducting the total from $123,352.60 which represents the total paper shipped by Butler, the appellant requests a minimum judgment of $23,068.76. We are hesitant, however, to adopt these figures in light of our disposition of the issue regarding the $14,000 payment, and also because some of the critical computations are made on the basis of conflicting evidence. Furthermore, before a fair determination can be made as to Maneke-Kinzie's liability, additional proof must be adduced to account for wasted paper and to trace the disposition of the unguaranteed paper, i. e., that shipped prior to November 1, 1965. The trial court did not make findings on these issues and we are reluctant to do so on the basis of the briefs and record alone. In short, we believe this to be a question of fact more properly resolved by findings of the trial judge.

The judgment is therefore reversed and remanded with directions to proceed in a manner consistent with this opinion.

---

7. Butler's brief indicated that on remand the bad debt charge-off may be contested as an inappropriate credit to Maneke-Kinzie's account.