[No. 2399-2. Division Two. June 7, 1978.]

GEORGE YANCOVICH, ET AL, *Respondents,* v. CAVANAUGH
LUMBER COMPANY, INC., *Appellants,* ASSOCIATES
ACCEPTANCE CORPORATION, ET AL,
RESPONDENTS.

*George Marsico,* for appellants.

*Richard T. Vlosich, Douglas W. McQuaid,* and *Robert G. Griffin,* for respondents.

REED, J.—Cavanaugh Lumber Company, Inc. (Cavanaugh) appeals from a judgment quieting title to real property in favor of plaintiffs George and Georgette Yancovich. We affirm.

On or about June 1, 1973, plaintiffs entered into a contract with Barber Construction Company (Barber) for the remodeling of their home in Tacoma. Plaintiffs borrowed approximately $7,800 from Associates Acceptance Corporation to finance this project. The majority of the project's

materials was purchased by Barber from defendant, its customary source of supply. These materials, valued at approximately $3,638, were delivered to plaintiffs' home on June 18 and July 11, 1973. The remodeling was substantially completed on July 11, 1973. Subsequently, Barber orally agreed to do additional work for plaintiffs; the cost of this second project was to be financed by plaintiffs' personal funds. On August 23 and 24, 1973, Barber went to defendant Cavanaugh's plant and obtained galvanized siding corners and 2– by 6–inch decking, valued at approximately $71. It appears the decking and its installation were called for by the original contract.

As is usual in the construction business, Barber was involved with numerous jobs simultaneously. When Barber ordered materials for its jobs, the defendant would prepare an invoice and create a separate account under the name of the person receiving the materials. As Barber received payments from its customers, it deposited the funds in a company bank account which was used to meet payroll and overhead expenses, including cost of materials. Barber's checks on the account to defendant were unaccompanied by any direction as to how the payment was to be allocated among Barber's various accounts with defendant. Defendant merely applied these payments to an open running account maintained for Barber and did not credit them to any specific job or account for which Barber had ordered materials.

On June 20, July 2 and July 11, plaintiffs made identical payments of $2,316 from the loan proceeds to Barber. Between July 7 and July 25, Barber made three payments to defendant totaling $6,000. On August 7 Barber's balance owing was $5,485. Between August 7 and September 5 Barber made three additional payments amounting to $4,778 and received a separate credit of $1,494, for a total of $6,272. Although Barber had substantially completed remodeling plaintiffs' home on July 11, none of the payments made by Barber after this date was credited by

defendant toward plaintiff's account; instead they were all applied to Barber's general account.

Materials ordered from defendant for all Barber's jobs during August and early in September left a balance of $5,946 on September 6. Only one other payment was made by Barber after this date, a check for $4,400. This check was initially credited to Barber's account, but this credit was stricken when the check was returned marked NSF. Defendant instituted suit on the check and obtained a judgment for $4,400, which has remained unsatisfied in view of Barber's present insolvency.

On October 30, 1973, defendant filed a materialmen's lien against plaintiffs' property for $3,680, which was $29 less than the value of all materials ordered for plaintiffs' remodeling project. When plaintiffs discovered the existence of the lien, they called defendant in an effort to determine the balance owed by Barber on materials ordered for their home. They were informed, however, that such information could not be disclosed. At trial, defendant's bookkeeper admitted that the requested balance could not be ascertained because of defendant's practice of applying Barber's payments to its general account rather than to individual jobs.

The trial court held that defendant's failure to apply Barber's payments specifically to any of the various job accounts mandated applying them to the oldest items of account. This method resulted in the extinguishment and discharge of plaintiffs' debt, thereby defeating defendant's materialmen's lien. The court also held that the original remodeling job was completed near July 11 and thus defendant's lien was not filed within the 90–day period provided by RCW 60.04.060. Because we find ample support for the trial judge's conclusion that plaintiffs' account was extinguished, we will not address the issue respecting a timely filing of the lien.

It is well established that if, at the time of payment, a debtor owing several accounts to his creditor provides no specific direction as to how the payment is to be applied or

allocated among those accounts, the right belongs to the creditor until the account is settled or suit is brought. If a debtor gives no direction and the creditor makes no timely application to any particular account, the law will apply any payments to the oldest accounts. *Bellingham Sec. Syndicate, Inc. v. Bellingham Coal Mines, Inc.,* 13 Wn.2d 370, 125 P.2d 668 (1942); *Whiting v. Rubinstein,* 10 Wn.2d 5, 116 P.2d 305 (1941); *Diettrich Bros. v. Anderson,* 183 Wash. 574, 48 P.2d 921 (1935); *Sturtevant Co. v. Fidelity & Deposit Co.,* 92 Wash. 52, 158 P. 740 (1916).

Barber's several payments to defendant were all made without any direction respecting the account to which they were to be credited. In light of this, defendant chose to credit them to Barber's open running account and it was not until trial that defendant made any attempt to allocate these payments to individual job accounts for Barber's customers. No payments were ever applied to extinguish accounts on a specific job–by–job basis. Defendant's decision to file a materialmen's lien against plaintiffs was therefore based on a purely random selection process. Using this method, defendant conceivably could have selected and proceeded against those customers of Barber whom defendant believed were financially responsible. As the trial court noted, this was merely an attempt on the part of defendant to keep its options open, a method not sanctioned by the law. The trial court's application of Barber's payments to the oldest item of Barber's account with defendant was proper.

■ Finally, plaintiffs complain of the trial court's refusal to award them attorney's fees and have further requested reasonable attorney's fees on appeal. RCW 60.04.130 provides in part that:

> The court *may allow* to the prevailing party in the action, whether plaintiff or defendant . . . a reasonable attorney's fee in the superior court, court of appeals, and supreme court.

(Italics ours.) Clearly, such an award rests in the discretion of the trial court. *Cf. Forrester v. Craddock,* 51 Wn.2d 315,

317 P.2d 1077 (1957). In our opinion the trial judge did not abuse his discretion when he denied the request for attorney's fees. We have determined there will be no allowance of fees for this appeal.

Judgment affirmed.

PETRIE and SOULE, JJ., concur.