591 P.2d 989

**ARC ELECTRIC COMPANY, INC., Plaintiff-Appellant,**

v.

**ESSLINGER–LEFLER, INC., an Arizona Corporation, dba DEFCO, and Leatherby Insurance Company, a New York Corporation, and Fireman's Fund Insurance Company, a California Corporation, Defendants-Appellees.**

No. 2 CA–Civ 2912.

Court of Appeals of Arizona, Division 2.

Jan. 10, 1979.

Rehearing Denied Feb. 20, 1979.

Review Denied March 6, 1979.

Ray C. Brown, Tucson, for plaintiff-appellant.

Goldstein, Flynn & Mason, Ltd. by Philip T. Goldstein and Thomas C. Mason, Phoenix, for defendants-appellees.

## OPINION

HATHAWAY, Judge.

Appellant (subcontractor) brought a breach of contract action for approximately $31,000 against, inter alia, appellees DEF-CO (contractor) and Leatherby Insurance Company (surety), which provided a Labor and Material Payment Bond. The trial court dismissed the claim against surety and awarded approximately $3,400 on the claim against contractor. Subcontractor appeals.

Contractor accepted subcontractor's bid of $117,000 to do electrical construction. Subcontractor completed this work and contractor paid him $117,000. During construction, the contractor requested that subcontractor do extra work. The parties agreed that contractor would pay subcontractor's cost plus 10% for overhead, 10% for profit, and 6% for sales tax on materials.

Subcontractor did 13 extras. For each extra, it prepared a job work order describing the work done, the labor hours involved[1] and the materials used. It charged contractor $15.50 ($16.50 after a wage increase) for each labor hour,[2] and priced the materials in the National Price Service Catalog as of the date of invoice. Contractor made contract change orders adopting the subcontractor's work orders for the first seven extras, but did not do so for the last six. Subcontractor's work orders totalled approximately $31,000. Contractor refused to pay any amount.

The court made the following findings of fact: (1) The parties agreed to a fixed price for two of the extras in the amount of approximately $3,400; (2) as to the remaining extras, the price was on a cost-plus basis; (3) the labor rate used greatly exceeded the wages paid the workmen; (4) the materials prices used greatly exceeded the amount paid for the materials, and (5) contractor was unaware that the labor and materials costs charged exceeded the costs incurred until after it made the contract change orders.

The trial court made the following conclusions of law: (1) Subcontractor should recover $3,400 for the two extras, but should recover nothing for the remaining extras because it failed to prove its actual costs; (2) the contract change orders should be reformed to express the true agreement by striking the dollar amount and substituting the cost-plus provision; (3) surety should be relieved of its obligation because subcontractor never stated its claim with "substantial accuracy" as required under the bond contract.

The parties did not decide what "costs" meant when they entered into the oral con-

---

1. The work order did not describe whether an apprentice, journeyman, or foreman did the work. Each was paid a different wage.

2. This amount is based on a base rate for wages plus additional costs. The base rate uses a journeyman's wages, and therefore does not take into account the difference between the wages of an apprentice, journeyman and foreman. Additional costs, amounting to 38% of the base rate are required by federal and state law, by contract with the union, by membership in NECCA, or as a necessary incident to performance of the contract.

tract. Each meant something different. Contractor intended the amount actually paid each workman and the amount actually paid for materials. Subcontractor intended the total amount paid for each hour of labor, calculated on the basis of its base labor rate, including additional costs, and the price of materials at the time of billing.

Subcontractor raises several issues on appeal, but all turn on one central question: What did the parties mean when they agreed that subcontractor would be paid its costs?

■ Interpretation of words used in a contract depends on the intention of the parties. But after considering the common usage of a term and the circumstances of its specific usage, we may decide that a word has a plain and definite meaning. If one of the parties intended that meaning, we will adopt it. 3 Corbin on Contracts, Sec. 535, at p. 20 (1960).

■ The meaning of "costs" is plain and definite in the sense that it denotes actual as opposed to average costs. The party performing under a cost-plus contract must keep a record of who worked on a given job and of his hourly wage. Approximations and averages are insufficient.

■ Although subcontractor recorded the total hours worked on extras, it did not record who worked on any of the extras. It calculated its labor rate on the basis of a journeyman's wage, even though apprentices may have worked on the extras. The testimony that subcontractor's foreman usually did the extras and that three journeymen must work for every one apprentice who works does not meet its burden of proof.

The trial court properly concluded that subcontractor failed to prove that its actual labor costs were the wages paid to journeymen. The work orders, however, correctly record the total hours worked on extras. The record shows the wages of an apprentice, and subcontractor actually paid at least this amount. It is entitled to recover labor costs calculated on this basis.

■ Subcontractor must pay additional amounts as required by federal and state law, union contract, and membership in NECCA. *Vinson & Pringle v. Lanteen Medical Laboratories*, 63 Ariz. 115, 159 P.2d 612 (1945), does not permit such items in a cost-plus contract unless specifically provided by agreement. They were not in this case, and therefore are not recoverable.

The meaning of "costs" is also plain and definite in the sense that it denotes present as opposed to future costs. The party performing under a cost-plus contract must keep a record of what materials it used and what it paid for them.

■ Subcontractor based its materials costs on the price quoted in a national price service publication. This price exceeded the amount subcontractor actually expended for the materials because it received discounts unreflected in the price service and prices rose during the period between purchase and billing. No other evidence was introduced. The trial court properly concluded that subcontractor failed to prove its materials costs.

■ The trial court reformed the contract change orders by changing the specific prices to costs plus the agreed percentages. Reformation is proper where the contract does not reflect the intention of the parties because of fraud, inequitable conduct or mistake. *Jeffries v. First Federal Sav. & Loan Ass'n of Phoenix*, 15 Ariz.App. 507, 489 P.2d 1209 (1971); 66 Am.Jur.2d, Reformation of Instruments, Secs. 1 and 24 (1973). The court found that subcontractor knew that its statement of costs exceeded its actual costs, that contractor neither knew nor should have known that this statement of costs did not conform to the agreement, and therefore the subcontractor acted inequitably. Subcontractor's belief that it was entitled to the amounts it demanded does not change this result. Laches and estoppel are inapplicable because contractor did not know that subcontractor's cost statement did not conform to the agreement. The trial court properly reformed the change orders.

Subcontractor contends that the trial court made several erroneous evidentiary rulings. As to evidence of trade usage, the court did not exclude the evidence; it heard it, but ruled that the witnesses were not experts qualified to testify about trade usage. Whether a witness is competent to testify as an expert is within the discretion of the trial court. Udall, Arizona Law of Evidence, Sec. 23 (1960). We find no abuse of discretion. As to subcontractor's labor rates and contract change orders, neither was evidence of its costs for the reasons stated above. As to the letter stating the terms of a possible settlement of its claim against contractor, the court did not exclude it; it received it into evidence, but the letter does not by its terms concede liability, nor should it be so construed because it was written before contractor knew that subcontractor's statement of costs exceeded its actual costs.

Surety's bond contract requires subcontractor to state its claim with "substantial accuracy." Subcontractor failed to do so because it did not state its costs with substantial accuracy.

Subcontractor contends that the trial court erred in not granting it attorney's fees. The trial court has discretion to award such fees to the "successful party" in a contested action arising out of a contract. A.R.S. Sec. 12–341.01. The trial court did not abuse its discretion.

Subcontractor contends that it was improperly charged with contractor's litigation costs because contractor did not timely file its statement of costs. We do not agree. A.R.S. Sec. 12–346 requires a statement of costs to be filed and served "within 10 days after judgment." Contractor filed and served its statement 11 days before judgment. The statute sets the outer limit; it does not prohibit filing and serving the statement prior to the judgment.

The trial court impliedly interpreted "costs" as we have. Its findings support its conclusions. The findings are not clearly erroneous. Rule 52(a), Rules of Civil Procedure, 16 A.R.S.

As stated above, subcontractor is entitled to recover labor costs calculated on wages of an apprentice. We therefore remand for further proceedings to determine such labor costs and for entry of an appropriate judgment. In all other respects, the judgment is affirmed.

HOWARD, J., and HENRY S. STEVENS, J., Retired, concur.