JALASKO ASSOCIATES, INC., Joe C. Ashlock and Alaska General Construction Company, Appellants,

v.

NEWBERY ENERGY CORPORATION, Appellee.

No. 6344.

Supreme Court of Alaska.

May 13, 1983.

Kenneth A. Norsworthy, Cummings & Routh, Anchorage, for appellants.

Mary Poteet, Graham & James, Anchorage, for appellee.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

## OPINION

BURKE, Chief Justice.

On December 4, 1974, a fire at the Surfcote Camp's pipecoating facility on the North Slope completely destroyed the camp's electrical generation capacity and much of its electrical system. Because of the need to keep the plant operating and the extreme weather conditions, it was vital that the electrical system be repaired as soon as possible. Rogers Electric Corporation (Rogers),[1] who was already working on the Slope and who had done the original wiring for the facility, was selected to repair the facility on a cost-plus basis. However, there was no written contract.

The Surfcote camp was owned by Joe Ashlock and managed by a joint venture composed of Alaska General Construction Company and Jalasko Associates, Inc. (joint venture). A fire loss policy was written for the camp by American Home Assurance Company (American) with Ashlock named as the insured.

Rogers performed work on the facility from December 1974 to June 1975 and submitted six invoices for electrical repairs totaling $455,855.06. Prior to September 1975, Ashlock made a $200,000 payment to Rogers. However, after Ashlock encountered difficulty recovering under his insurance policy with American, he made no further payments.

In September 1975, Rogers filed a complaint to collect the balance owed and obtained an entry of default. In October 1977, Rogers, Ashlock, and the joint venture entered into negotiations which resulted in Ashlock making a payment of $214,264.40 to Rogers and promising to pay the remaining $41,590.16 after Rogers' invoices were further substantiated. Rogers agreed to move for withdrawal of the entry of default. It did so and the default was set aside.

After Ashlock failed to pay the balance due, however, Rogers resumed the litigation by filing an amended complaint. Ashlock and the joint venture counterclaimed, asserting that Rogers' billing was erroneous and that Rogers had been overpaid. The court below granted summary judgment in favor of Rogers and entered final judgment for Rogers pursuant to Alaska Civil Rule 54(b). Both rulings are appealed here.

We first address the propriety of the summary judgment ruling. Ashlock and the joint venture attack the summary judgment on two grounds. First, they argue that the trial court erroneously concluded that Rogers' billing was adequate. Their second argument is that Rogers should not have been permitted to apply payments to earlier invoices so as to limit the issues in the lawsuit to the amount owed on the last two invoices.

As to the adequacy of Rogers' billing, there were no material issues of fact left to be resolved and, as a matter of law, Rogers met its burden of providing adequate documentation of its charges. On appeal, Ashlock and the joint venture argue that Rogers' invoices failed to meet the test of "sub-

---

1. In 1975, Newbery Energy Corporation purchased Rogers and became the successor in interest of all debts owed to Rogers and all causes of action held by Rogers.

stantial accuracy" as set forth in *ARC Electric Co., Inc. v. Esslinger-Lefler, Inc.*, 121 Ariz. 501, 591 P.2d 989, 993 (Ariz.App.1979). This so called test, however, was a provision of a surety bond contract which required the subcontractor to "state its claim with 'substantial accuracy.'" *Id.* at 993. No such contract provision exists in the case at bar.

In *ARC Electric,* the court concluded that a subcontractor had failed to prove its actual labor costs under a cost-plus contract where it recorded the total amount of hours worked but failed to specify who did the work. The subcontractor calculated the labor rate on the basis of a journeyman's wage even though apprentices did part of the work. The court also stated that a contractor performing under a cost-plus contract "must keep a record of what materials it used and what it paid for them." *Id.* at 992.

■ Rogers, unlike the subcontractor in *ARC Electric,* did describe the type of laborer used and the corresponding labor rate, indicating whether the rate was standard, overtime, or double time. Further, Rogers provided a description of the item, quantity used and the cost of the item to Rogers. We hold that the trial court properly concluded that the form of Rogers' billing under the cost-plus contract was adequate, and as a matter of law constituted a prima facie showing of Ashlock's obligation to pay under the cost-plus contract.

■ Despite our conclusion that Rogers' billing was adequate on its face to impose liability on Ashlock under the cost-plus contract, we hold that summary judgment was improper in this case as material issues of fact were raised concerning the amounts billed in the invoices.

■ Rogers properly states the rule of law which permits a creditor to apply a debtor's payment to any of the debtor's obligations, absent direction by the debtor prior to or at the time of payment.[2] Rogers based its summary judgment motion on this rule, and argued that because it applied Ashlock's payments of $200,000 and $214,264.40 to the oldest invoices, its subsequent lawsuit concerned only the debt obligations of the last two invoices. It concluded that although issues of fact existed concerning the earlier invoices, these issues were not material to the last two invoices and therefore it was entitled to summary judgment. The trial court apparently accepted this argument.

■ However, Rogers failed to state one of the exceptions to this rule of law. A creditor may not apply a payment to a disputed debt, and thereby cut off the debtor's ability to litigate the debt. *Standard Surety & Casualty Co. v. United States,* 154 F.2d 335, 337 (10th Cir.1946) (after a controversy has arisen between the parties, neither may designate how payment shall be applied); *Fowler v. Courtemanche,* 202 Or. 413, 274 P.2d 258, 265 (Or.1954); Restatement (Second) of Contracts § 259(2)(c) (1982); *Annot.,* 164 ALR 940, 941 (1946).

■ At the time that Ashlock made the $214,264.40 payment, a lawsuit had been filed and default entered. This alone would not indicate that the remaining debt was disputed, but coupled with the fact that Ashlock expressly withheld payment of the remaining debt until Rogers further substantiated the charges, we can only con-

2. *Yancovich v. Cavanaugh Lumber Co., Inc.*, 20 Wash.App. 347, 581 P.2d 1057, 1059 (Wash. App.1978); Restatement (Second) of Contracts § 259 (1982); S. Williston, *Williston on Contracts,* § 1796 at 394 (3rd ed. 1972).

We reject the argument of Ashlock and the joint venture that common-law rules governing application of payments are inapplicable because they owe but a single obligation to Rogers under the cost-plus contract. Although it is possible that parties under a cost-plus contract would agree to a single total billing at the end
of the work, such was not the case here. Rogers presented Ashlock and the joint venture with six separate invoices as the work progressed. The invoiced account matured on the date of presentation and a 12% annual rate of interest began to run on the past due balance of each invoice. Thus, each invoice represented a distinct obligation under the cost-plus contract. *Hollywood Wholesale Electric Co. v. John Baskin, Inc.,* 121 Cal.App.2d 415, 263 P.2d 665, 672 (Cal.App.1954).

clude that Ashlock disputed the invoice charges in the amount still withheld. Because this disputed debt did not involve a specific invoice but rather all the invoices generally, Rogers was precluded from applying the $214,264.40 payment in such a way as to limit Ashlock's ability to litigate the amount owed on any particular invoice.

-Summary judgment was therefore improper since material issues of fact existed at least as to the earlier invoices. Rogers' prima facie case of entitlement to summary judgment was rebutted by the testimony of William Coleman, the insurance investigator. Coleman stated during his deposition, that he was unable to locate on the as-built drawings, various pieces of equipment listed in the invoices which Rogers allegedly installed. In fact at the summary judgment hearings, Rogers admitted that issues of fact existed as to the accuracy of the billing in the earlier invoices. Rogers further argued, however, that these factual disputes were not material to the present lawsuit in that the lawsuit concerned only the $41,-590.66 balance owed on the two most recent invoices. Because we find that Rogers was prohibited from applying the $214,264.40 payment to the earlier disputed invoices, factual disputes concerning these earlier invoices were material to this lawsuit. Rogers therefore was not entitled to judgment as a matter of law.

■ Summary judgment was improper for another reason as well. Rogers asserts that Ashlock's first payment of $200,000 was applied to the first invoice. At the time of payment, no lawsuit had been filed nor were any of the invoices in dispute. However, under Restatement (Second) of Contracts § 259 comment (b) at 303 (1982),

the application of payment "is not effective unless within a reasonable time, the creditor notifies the debtor or otherwise manifests to him his intention to make the application." From the record, it is not apparent that Rogers in fact, manifested to Ashlock its intent to apply the $200,000 payment to the first invoice.[3] Without this requisite manifestation of intent, we conclude that Rogers' application of the payment was ineffective and did not remove issues concerning the first invoice from the scope of the lawsuit. Thus, the issues of fact raised by Ashlock concerning the first invoice were material to the lawsuit and summary judgment in favor of Rogers was improper.

Because summary judgment was improper, we need not address the challenge to the trial court's ruling under Civil Rule 54(b) granting final judgment.

REVERSED and REMANDED.

RABINOWITZ, Justice, concurring.

I agree with the court's holding that genuine issues of material fact exist which require reversal of the superior court's entry of summary judgment. I disagree with the court's position that the rule of law and exceptions thereto set out in the Restatement (Second) of Contracts § 259 (1982) are relevant to the disposition of this appeal. In my view, this case involves a single cost-plus contract under which Ashlock made a series of installment payments to Rogers in partial discharge of a fixed debt incurred under the contract. Ashlock's obligation to Rogers was not rendered divisible by the fact that periodic billings were presented and paid.[1] In short, Ashlock's partial pay-

3. Rogers' copy of the first invoice contains a handwritten notation indicating that Ashlock's $200,000 payment was applied to the invoice, leaving a balance due of $21,959.45. However, the record does not reveal that Ashlock received a copy of this notated invoice.

1. See, e.g., *Management Services Corp. v. Development Associates*, 617 P.2d 406, 408 (Utah 1980) (contract severable or entire depending on intent of parties at time it was entered into; manner of apportioning consideration is one factor in determining intent, but basic test is

whether parties would have agreed on less than whole or would have insisted upon entirety of consideration exchanged); *Boesiger v. De Modena*, 88 Idaho 337, 399 P.2d 635, 641 (Idaho 1965) (apportionment of consideration is item to consider in determining whether contract is entire or severable, but is not conclusive). It seems apparent here that Ashlock retained Rogers to complete a single project—rehabilitation of the electrical system at the Surfcote facility—not to perform a series of unrelated tasks. Since Rogers' obligation could not be

ments did not abrogate its right to dispute the total amount due Rogers under the parties' unitary cost-plus contract.

viewed as divisible, neither should Ashlock's. *See Baffin Land Corp. v. Monticello Motor Inn,* 70 Wash.2d 893, 425 P.2d 623, 629 (Wash.1967)

(en banc) (contract is divisible when performance of each party can be divided into equivalent and corresponding parts).